MARDIROS ZANTURJIAN *vs.* KIRKER BOORNAZIAN *et al.*

PROVIDENCE—APRIL 24, 1903.

PRESENT: Tillinghast and Douglas, JJ.

(1) *Equity. Injunctions. Agreements in Restraint of Trade. Contracts. Statute of Frauds.*

A bill in equity seeking a perpetual injunction alleged that respondents entered into an agreement with complainant to convey to him their business, together with the good will thereof, and further agreed that they would not engage in the business, either directly or indirectly, within a specified territory, and further agreed that they would execute a writing not so to engage in said business. Respondents denied making the agreement not to engage in business and to execute a writing to such effect. A bill of sale of the property in question was executed by respondents, which, after describing the articles conveyed, contained the clause, "together with the good will of said business." Upon objection to the introduction of oral testimony as to the making of the disputed agreement:—

*Held*, that the agreement was not within Gen. Laws cap. 233, § 6, clause 5—the statute of frauds—the statute being confined to contracts which by agreement are not to be performed within a year, and not to such as may by circumstances be postponed beyond the year.

(2) *Varying Written Contract.*

*Held*, further, that the testimony was inadmissible as tending to vary a written contract by parol.

(3) *Good Will. Agreements in Restraint of Trade. Unfair Competition.*

*Held*, further, that, notwithstanding that respondents sold the good will of the business, they had, in the absence of an express stipulation to the

contrary, the right to re-engage in a similar business in the same neighborhood.

*Held*, further, that respondents would not have the right to attempt to secure the patronage of their old customers or to induce them not to deal with complainant.

(4) *Contracts. Consideration.*

*Held*, further, that an agreement by respondents, subsequent to the making of the bill of sale, to make another writing when desired by complainant to embody the agreement not to re-engage in the same business, would be without consideration and unenforcible.

BILL IN EQUITY. Heard on bill, answer, and proof. Bill dismissed.

TILLINGHAST, J. The object of the complainant in prosecuting this bill is to perpetually enjoin the respondents and each of them from carrying on the coal and wood business in the cities of Central Falls and Pawtucket, or in the vicinity thereof.

(1) The bill alleges that on the 21st day of April, 1902, and for a long time prior thereto, the respondents owned and conducted a retail coal and wood business at No. 14 Charles street, in the city of Central Falls; that for some time prior to said date they had advertised said business for sale, representing that they were about to leave said city of Central Falls and engage in other pursuits; and that on said 21st day of April the respondents entered into an agreement with the complainant to convey to him all their stock and property in said business, together with the good will thereof, for the sum of $900, and further agreed that they would not, nor would either of them from and after the date of said sale, engage in the business of retailing coal and wood either directly or indirectly in either of said cities or in the vicinity thereof, whereby they might come in competition in business with the complainant, and further agreed that they would execute a writing not to so engage in said business; that in pursuance of said agreement all of the stock in trade of every kind and description used by the respondents in carrying on their business, together with the good will of said business, was conveyed to the complainant, he paying therefor the said sum of $900; and that

thereupon he took possession of said property, and has ever since conducted and is now conducting the business of retailing coal and wood at said location.

The bill further alleges that the specific property in question was not worth more than $500, and that the balance of the amount paid—to wit, $400—was paid for the further agreement aforesaid on the part of the respondents. It also alleges that the respondents, notwithstanding their agreement not to re-engage in said business, have, since the making thereof, returned to the city of Central Falls and established a retail coal and wood business directly in the rear of the location aforesaid, and have engaged in and are now engaged in conducting the business of retailing coal and wood, and are soliciting trade relations with their former customers, and in all ways competing in said business with the complainant, all of which is in violation of their agreement aforesaid.

The prayer of the bill is that the respondents may be perpetually enjoined from carrying on said business within the locality aforesaid.

The answer of the respondents admits that they sold and conveyed said stock in trade and business to the complainant for the sum of $900, but they deny that they agreed that they would not again engage in the business of retailing coal and wood in the city of Central Falls or in its vicinity, and they deny that they agreed to execute a writing not to so engage in business and not to compete with the complainant in manner and form as alleged in the bill.

They further deny that the property and goods conveyed by them to the complainant were only of the value of $500, and that the price agreed upon—namely, $900—was fixed in view of the fact that they agreed not to again enter into said business, but, on the contrary, they allege that the said property was of the value of $900 and upwards. They also deny that they were ever requested to execute a writing to the effect that they would not again engage in said business or that they ever agreed to execute such a writing.

The bill of sale of the property in question, which was duly executed and delivered by the respondents to the complainant,

after describing the principal articles conveyed thereby, contains this clause, viz.: "together with the good will of said business."

At the trial of the case, which was heard by the court on oral testimony, counsel for respondents objected to the introduction of oral testimony as to the making of the alleged agreement by the respondents not to re-engage in said business, on the grounds (1) that such an agreement was within the statute of frauds; and (2) that, so long as the parties had reduced their agreement to writing, it could not be added to or varied by parol evidence. The court, however, permitted the testimony to be offered, *de bene,* and the question now before us is whether we can properly consider and give weight thereto.

In so far as the objection to the testimony is based upon the first ground, it is not tenable. Under the statute of frauds of this State (Gen. Laws R. I. cap. 233, § 6, clause 5), no action can be maintained "whereby to charge any person upon any agreement which is not to be performed within the space of one year from the making thereof; unless the promise or agreement upon which such action shall be brought, or some note or memorandum thereof, shall be in writing and signed by the party to be charged therewith, or by some other person by him thereunto lawfully authorized."

This statute "is confined to contracts which by agreement are not to be performed within a year, and not to such as may by circumstances be postponed beyond the year." *Fenton* v. *Emblers,* 3 Burr. 1278. Although the alleged agreement in the case at bar was that the respondents would never again engage in said business, yet it was personal to them; and hence if they had died within the year, as they might, the contract would have been fully performed within the year, and so was not within the statute. This branch of the case is clearly within, and fully controlled by, *Richardson* v. *Pierce,* 7 R. I. 330, and hence there is no occasion for a further discussion thereof.

(2)   Was the testimony obnoxious to the second rule above invoked, namely—that it tended to vary a written contract by

parol?  We think this question must be answered in the affirmative.

The testimony offered by the complainant as to what took place at the various interviews between the parties prior to the making of the bill of sale was clearly to the effect that the respondents expressly agreed that they would never re-engage in said business as alleged in the bill, and also that they would put this agreement in writing; and that a substantial part of the consideration aforesaid was paid because of this agreement.

The testimony offered by the respondents consisted of a full and flat denial of the making of any such agreement.   So that, if the testimony were admissible we should be called upon to decide as to the relative weight thereof.   But in view of the fact that, subsequent to said negotiations, the parties went together to the office of Mr. Gooding and had a bill of sale drawn up and formally executed which, while it did expressly specify that the good will of the business was included in the sale, made no mention of the restriction in question, to now permit the complainant to prove that the contract was something different from that contained in the bill of sale would be to permit a written agreement to be added to or varied by parol, which the law will not allow.   For the law presumes the written agreement " to be *the* contract of the parties, and to embrace all the terms and stipulations deemed material by either at the time of its execution."   *Sweet* v. *Stevens*, 7 R. I. 375.   See also *Myron* v. *Union Ry. Co.*, 19 R. I. 125;   *Dyer* v. *Print Works*, 21 R. I. 63;   *Watkins* v. *Greene*, 22 R. I. 34;   *Vaughan* v. *Mason*, 23 R. I. 348;   Am. & Eng. Ency. of L. 2nd ed. vol. 4, p. 568, and cases cited in note 3.

Even conceding, therefore, that the complainant has shown by a clear preponderance of evidence that the respondents did orally agree not to re-engage in said business as alleged in the bill, so long as this stipulation was not incorporated in the written agreement which was subsequently made, and so long also as no claim is made by the complainant that any fraud was practiced upon him in connection with the making and execution of the written contract in question, he fails to show a case which entitles him to relief.

(3)     That, notwithstanding the fact that the respondents sold the good will of the business in question to the complainant, they still have, in the absence of an express stipulation to the contrary, the right to re-engage in a similar business in the same neighborhood seems to be well settled by the authorities.  See *Pearson* v. *Pearson,* 27 Ch. Div. 145;  *Knoedler* v. *Boussod,* 47 Fed. Rep. 465;  *Bassett* v. *Percival,* 5 Allen, 345;  *Smith* v. *Gibbs,* 44 N. H. 335–43.   The complainant's counsel does not attempt to controvert this proposition of law.  The respondents clearly have not the right, however, to apply to any of their old customers privately, either personally or by another, to secure their patronage or to induce them not to deal with the complainant;  for this would be in plain violation of their written agreement.

(4)     The complainant offered some testimony to the effect that, subsequent to the making of the bill of sale, the respondents agreed to make another writing, if, and whenever, the complainant desired the same, in which they would set forth the agreement not to re-engage in said business, and complainant's counsel contends that respondents are bound by this agreement.

We do not find that this position is sustained by the evidence. But even if it were, such contract was without consideration and hence unenforcible.

The bill must therefore be dismissed.

*Herbert A. Rice,* for complainant.

*Barney & Lee and James F. Murphy,* for respondents.