ADELAIDE WEESNER et al. v. ELECTRIC POWER
BOARD OF CHATTANOOGA et al.— 344 S. W. (2d)
766.

Eastern Section. January 6, 1961.

Certiorari Denied by Supreme Court March 10, 1961.

Wilkerson & Abshire, Chattanooga, for appellants.

Atchley & Atchley, Chattanooga, for appellees.

HALE, J.    This involves a controversy as to the amount of retirement compensation due certain employees of the Electric Power Board of Chattanooga, Tennessee, based on their rights under a retirement plan as promulgated by their employer.

In April, 1935, the Electric Power Board of Chattanooga was created by an act of the General Assembly of the State of Tennessee, and in response to the wide demand of employees throughout the United States for retirement benefits the officials of the said Electric Power Board put into effect a retirement plan for its employees and incorporated the same in a publication dated August 1, 1944, entitled ''Retirement Plan of the Electric Power Board of Chattanooga.''    By its terms and provisions the employees were to contribute 4 percent of their base salaries adjusted from time to time as they received pay increases and the Board was to pay an additional amount so as to provide each employee who met the eligibility requirements with individual policies issued by the Provident Life & Accident Insurance Company providing for retirement income and life insurance benefits.    The plan also provided for a minimum retirement income of 20 percent of the base salary of any retired employee.

Under date of August 1, 1954, the Board reissued its retirement plans in substantially the same form as originally issued in so far as the issue involved in this controversy are concerned.

And on August 1, 1956, it was revised again. The purpose of this revision being to present to the employees a plan whereby they could receive additional benefits under the Social Security Program of the United States Government by voting to accept the provisions of the Social Security Program, which they did by an overwhelming vote of 304 to 20. Under the printed publication of the Power Board setting out this plan the following language was used:

"The Retirement Plan is a 'plus Social Security Plan.' Retirement plan monthly income benefits are in addition to any Social Security benefits any employee may be eligible to receive."

In March, 1956, a publication called "Spotlight" by and for the employees of the Electric Power Board of Chattanooga reported the vote to accept the terms and provisions of the Social Security Act. And in that publication the fact that the new plan would not affect the present policy in existence was stressed in the headlines of the article and referred to in the body of the instrument in the following language:

"Adoption of the plan was practically assured when Mr. Finley, in a series of five meetings with Board employees, assured them its adoption would not alter the retirement policies in effect at the present time." (Mr. Finley was the General Superintendent of the Board.)

On May 1, 1958, the Electric Power Board published its retirement plan which contained this pertinent paragraph that was not included in the publication of August 1, 1956, as follows:

"Minimum Retirement Income

"The Plan guarantees that any member who retires on his normal retirement date will receive a total retirement income—including his primary Social Security benefit—equal to a minimum of 20% of salary as of date of retirement. Total retirement income shall mean the sum of a member's Social Security benefit and the normal monthly retirement Plan."

In the year 1957 the complainants reached their retirement age and were retired by the defendant Board. In determining the amount of retirement benefits the formula was used where the minimum retirement income was so calculated as to take advantage of the Social Security benefits being received by the employees, therefore, substantially reducing its provision of a minimum payment of 20 percent of the employee's base salary on reaching retirement.

While it is true that the plan originally promulgated by the defendant Board was in the nature of a gratuity, nevertheless, when it was put into effect by the employer, the employees contributed thereto and received certain rights thereunder that became part of their compensation.

In the letter of the Chairman of the Board to the employees published in The Retirement Plan as revised August 1, 1956, we have the employees being given the following assurances:

"No changes have been made in the Retirement Plan that will affect any policies dated before August 1, 1956. All life insurances in effect and monthly retirement income called for in these policies at Normal Retirement will be unchanged, with present

member's contribution (four (4%) percent on covered salary) remaining as at present."

It is true the Board reserves the right to change, amend, or discontinue the plan in order to protect themselves and their employees against changed conditions in the future. Nevertheless, the Board specifically provided that should it ever discontinue the Plan, the rights of its employees who had been participating under the plan would be vested immediately.

■ In the instant case the three employees who seek a recovery had a right to rely upon the printed publications of the defendant Board and it is estopped from asserting a contrary position, especially so when the vote of the employees to accept Social Security benefits was based on assurances that their rights under the existing plan would not be affected in any way and that additional deductions would be made to meet the Social Security requirements. "Employment contracts containing provisions for retirement pay are liberally construed to effectuate the declared intention of the parties to pay additional compensation for services rendered in the past; and, where the inducement of a pension was accepted by an employee, booklets in which the employer explained the pension system will be construed most strongly against the employer." See 56 C. J. S. Master and Servant sec. 169, p. 831, citing the case of Sigman v. Rudolph Wurlitzer Co., 57 Ohio App. 4, 11 N. E. (2d) 878.

■ In recent years the question of pensions for employees has constituted a serious matter for both employers and employees, and management has recognized it by providing pensions for its employees. In doing so,

these rights become an inducement to employment and become a part of the employee's compensation, and even though management may reserve the right to revise, amend, or change the employees vested rights will be safeguarded.

In the case of Bird v. Connecticut Power Company et al., 144 Conn. 456, 133 A. (2d) 894, 897, the Court holds: "A board of directors cannot legally strip an employee of the benefits of a pension plan where the employee has complied with the terms of the offer of a pension since the purposes of the plan could be readily frustrated at the whim of the directors. Forrish v. Kennedy, 377 Pa. 370, 376, 105 A. (2d) 67; Wilson v. Rudolph Wurlitzer Co., 48 Ohio App. 450, 454, 194 N. E. 441. Even where the employer declares the plan is within the absolute discretion of the directors, the court will interpret the plan as a whole so as to give effect to its general purpose in securing the loyalty and continued services of the employees, and the employer may not defeat the employee's reasonable expectations of receiving the promised reward. Mabley & Carew Co., v. Borden, 129 Ohio St. 375, 379, 195 N. E. 697; Orton & Steinbrenner Co., v. Miltonberger, 74 Ind. App. 462, 468, 129 N. E. 47; Menke v. Thompson, 8. Cir., 140 F. (2d) 786, 791.''

Retirement rights are analogous to provisions fixing the rights to employees for paid vacations. In the case of Wil-low Cafeterias, Inc., Kastan v. Siegel, 2 Cir., 111 F. (2d) 429 we find the Court holding in bankruptcy proceeding that the right to paid vacations constitutes a preferred claim against the assets of a corporation in bankruptcy. The right to retirement benefits should stand on an equal footing with the right to paid vacations. Both

are inducements of the employment, both provide for the employees' well-being and peace of mind, which enures to the benefit of the employers. Along the same lines we have the recent Tennessee case of Textile Workers Union of America, Local No. 513 v. Brookside Mills, 203 Tenn. 71, 309 S. W. (2d) 371.

The record reveals that the complainants only paid for Social Security benefits for one or two years, and the amount of compensation they are receiving could not have been a result of their own contributions. This presents the question—who should benefit from this windfall from the Federal Government—the workers or the Electric Power Board of Chattanooga?

The purpose of the Social Security Act was to provide old-age, unemployment, and disability insurance for workers in industry. Social Security Act, secs. 801, 804, as amended, 26 U. S. C. A. Int. Rev. Code, secs. 1400, 1410. See United States v. Vogue, Inc., 4 Cir., 145 F. (2d) 609.

Had the employees not voted to accept the terms of the Social Security Program the employees would have received the retirement pay they are now demanding without any question. And the Power Board would pay just what it had agreed to pay under its own plan. At best, the defendant Board can only be damaged for the small contribution they paid on behalf of these employees from the time they accepted the provision of the Social Security Program in 1956 until their retirement in 1957, which would be infinitesimal, and these payments were made at a time when the officials of the defendant Board had assured the employees that the original retirement plan would not be affected in any way.

The equities are clearly in favor of the complainants and there can be no real dispute involving the facts. We concur with the findings of the Chancellor and hold that the complainants are entitled to a recovery of 20% of their base salary irrespective of any Social Security benefits. Let a decree be entered to this effect including interest from the date of the decree in the lower Court and the cost of the cause.

Affirmed.

McAmis, P. J., and Cooper, J., concur.