**239 A.2d 725.**

EAST PROVIDENCE CREDIT UNION *vs.* JOSEPH GEREMIA *et ux.*

MARCH 22, 1968.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. This is a civil action to collect from the defendants the balance due on a promissory note. The defendants filed a counterclaim. The case was heard by a justice of the superior court. He dismissed the plaintiff's complaint and found for the defendants on their counterclaim. The case is before us on the plaintiff's appeal.

On December 5, 1963, defendants, who are husband and wife, borrowed $2,350.28 from plaintiff for which they gave their promissory note. The payment of the note was secured by a chattel mortgage on defendants' 1962 ranch wagon. The mortgage contained a clause which obligated defendants to maintain insurance on the motor vehicle in such amounts as plaintiff required against loss by fire, collision, upset or overturn of the automobile and similar hazards. This provision also stipulated that if defendants failed to maintain such insurance, plaintiff could pay the premium and "* * * any sum so paid shall be secured hereby and shall be immediately payable." The defendants had procured the required insurance and had designated plaintiff as a loss payee on its policy. The premium therefor was payable in periodic installments.

On October 11, 1965, defendants received a notice from the insurance carrier informing them that the premium then payable was overdue and that, unless it was paid within the ensuing twelve days, the policy would be cancelled. A copy of this notice was also sent by the insurer to plaintiff who thereupon sent a letter to defendants. The pertinent portion thereof reads as follows:

> "We are in receipt of a cancellation notice on your Policy.
> "If we are not notified of a renewal Policy within 10 days, we shall be forced to renew the policy for you and apply this amount to your loan."

Upon receiving this communication, defendant wife testified that she telephoned plaintiff's office and talked to the treasurer's assistant; that she told this employee to go ahead and pay the premium; that she explained to the employee that her husband was sick and they could not pay the insurance premium and the payment due on the loan; and that the employee told her her call would be referred to plaintiff's treasurer. The employee testified that she told defendant to contact this officer. We deem this difference in testimony insignificant. It is clear from the record that defendants communicated their approval of and acquiescence in plaintiff's promise to pay the insurance due on the car and that this employee notified the treasurer of such fact.

On December 17, 1965, defendants' motor vehicle was demolished in a mishap the nature of which cannot be learned from the record. It is obvious, however, that the loss was within the coverage of the policy. The automobile was a total loss. The evidence shows that at the time of the loss, the outstanding balance of the loan was $987.89 and the value of the ranch wagon prior to the loss exceeded the balance due on the loan.

Sometime after this unfortunate incident, all the parties became aware that the insurer would not indemnify them for the loss because the overdue premium had not been paid and defendants' policy had been cancelled prior to the accident.

The defendants had on deposit with plaintiff over $200 in savings shares. The plaintiff, in accordance with the terms of the note, had deducted therefrom certain amounts and applied them to defendants' indebtedness so that at the time this litigation was instituted defendants allegedly owed plaintiff $779.53.

In finding for defendants on their counterclaim, the trial justice awarded them all the moneys which plaintiff had ap-

plied after the date of defendants' accident to the then outstanding balance of the loan.[1] The justice, at the conclusion of the evidence, made certain findings which were in accordance with the testimony as set forth above. He found from the evidence that plaintiff, in pursuance of its right under the mortgage contract and its letter to defendants, had agreed to renew the policy and charge any premiums paid by it on behalf of defendants to the outstanding balance on their loan.

In reaching this conclusion, the trial justice made the following observation: "* * * it seems to me quite clear that the defendants, having been given notice that the plaintiff would do this [pay the overdue premium], and calling the plaintiff's attention to the fact that they weren't going to renew and that the plaintiff had better do this to protect everybody, seems to me at that point there was agreement on the part of the plaintiff that it would procure this insurance. Or, put it another way, that they are estopped from denying that they were exercising the right that they had under the original mortgage." The superior court further found that defendants were justified in believing in plaintiff's assurance that it would pay the overdue premium.

The sole issue raised by this appeal is whether or not plaintiff is precluded from recovering on its loan contract by reason of its failure to fulfill a promise to defendants to pay the overdue insurance premium. In urging that the trial justice erred in finding for defendants, plaintiff directs our attention to *Hazlett* v. *First Fed. Sav. & Loan Assn.*, 14 Wash.2d 124, 127 P.2d 273, in which the court refused to apply the doctrine of promissory estoppel to enforce a gratuitous promise made by a mortgagee to procure fire insurance for mortgaged property even though the mortgagor

---

[1]Included in this amount are the moneys deducted from the savings shares, $80 received from a junkyard as the salvage value of the wrecked automobile and a $10 payment made by defendants on December 28, 1965.

suffered serious detriment in reliance on the mortgagee's promise.

Until recently it was a general rule that the doctrine of estoppel was applied only to representations made as to facts past or present. *Anderson* v. *Polleys,* 54 R. I. 296, 173 A.114; *Croce* v. *Whiting Milk Co.,* 102 R. I. 89, 228 A.2d 574. This doctrine is commonly known as "equitable" estoppel. Over the years, however, courts have carved out a recognized exception to this rule and applied it to those circumstances wherein one promises to do or not to do something in the future. This latter doctrine is known as "promissory" estoppel. See *Southeastern Sales & Service Co.* v. *T. T. Watson, Inc.,* Fla. App., 172 So.2d 239. See also *Berarducci* v. *Diano,* 60 R. I. 305, 198 A. 351.

Promissory estoppel is defined in the 1 *Restatement, Contracts,* §90, p. 110, as follows:

> "A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of its promise."

Although this court has not yet applied the doctrine of promissory estoppel as it is expressed in the *Restatement,* we have in *Mann* v. *McDermott,* 77 R. I. 142, 73 A.2d 815, implied that in appropriate circumstances we would.

Traditionally, the doctrine of promissory estoppel has been invoked as a substitute for a consideration, rendering a gratuitous promise enforceable as a contract. 28 Am. Jur.2d, Estoppel and Waiver, §48 at 657-58; note 20 *S. W. Law Journal* 656, "Extension of the Doctrine of Promissory Estoppel into Bargained-for Transactions." Viewed in another way, the acts of reliance by the promisee to his detriment provided a substitute for consideration. *Hoffman* v. *Red Owl Stores, Inc.,* 26 Wis.2d 683, 133 N.W.2d 267.

While the doctrine was originally recognized and most

often utilized in charitable subscription cases, it presently enjoys a much wider and more expanded application. See 1 *Williston, Contracts* (3d.Jaeger), §140; 1A *Corbin, Contracts*, §§193-209; 48 A.L.R.2d 1069-1088. Relative to the problem presented in this case, we have discovered several cases in which the theory of promissory estoppel has been invoked. In these cases, courts have held that a gratuitous promise made by one to procure insurance on the promisee's property is made enforceable by the promisee's reliance thereon and his forbearance to procure such insurance himself. *Graddon* v. *Knight*, 292 P.2d 632, 138 Cal. App.2d 577; see also 1A *Corbin, Contracts*, §208 at 265, and cases cited therein. Our research indicates, therefore, that the contrary view expressed in *Hazlett* v. *First Fed. Sav. & Loan Assn., supra,* and relied upon by plaintiff, is a minority viewpoint on the issue before us and we are disinclined to follow it.

In the instant case, however, after a careful review of the facts, we are of the opinion that plaintiff made more than a mere gratuitous or unrecompensed promise. Instead, we believe that the promise by plaintiff to pay the insurance premium on defendants' car was one made in exchange for valid consideration. The mortgage contract provided that in the event plaintiff paid a premium for defendants, it would add such expended sums to the outstanding balance of defendants' loan. We are satisfied from a close examination of plaintiff's reply to defendants' interrogatories and of the chattel mortgage agreement that plaintiff intended to compute interest on any money it expended in keeping the insurance on defendants' car active. Hence, in our opinion, the interest due on any sums paid out by plaintiff on behalf of defendants for insurance represents valid consideration and converts their promise into a binding contract. The plaintiff's failure to successfully carry out its promise must be deemed a breach of that contract entitling defendants to assert a right of action which would at the

very least offset any amount of money found owing to plaintiff on their loan.

We would point out that, even if it could be shown by plaintiff that it never intended to compute any interest on amounts paid by it for insurance premiums on defendants' car and that its promise was truly a pure gratuitous undertaking, we believe such a showing would be of no avail to it since we would not hesitate in finding from this record evidence sufficient to establish a case for the application of promissory estoppel. The conditions precedent for the invocation of this doctrine are well set forth by Dean Boyer in his oft-cited article, "Promissory Estoppel: Requirements And Limitations Of The Doctrine," 98 U.Pa. L. Rev.459. He enumerates the conditions as follows:

> "(1) Was there a promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee?
>
> "(2) Did the promise induce such action or forbearance?
>
> "(3) Can injustice be avoided only by enforcement of the promise?"

After a study of the facts in this case, our reply to each of the above inquiries is a definite "yes." Promissory estoppel as a legal theory is gaining in prominence as a device used by an increasing number of courts to provide a much needed remedy to alleviate the plight of those who suffer a serious injustice as a result of their good-faith reliance on the unfulfilled promises of others. As the Arkansas supreme court has so appropriately commented in *Peoples Nat'l Bank of Little Rock* v. *Linebarger Constr. Co.*, 219 Ark. 11 at 17, 240 S.W.2d 12 at 16, the law of promissory estoppel exhibits "* * * an attempt by the courts to keep remedies abreast of increased moral consciousness of honesty and fair representations in all business dealings * * *." We subscribe to those sentiments.

The plaintiff's appeal is denied and dismissed and the judgment appealed from is affirmed.

*Greenwald & Santaniello, Martin L. Greenwald, V. James Santaniello,* for plaintiff.

*Robert N. Greene,* for defendants.