**Edward J. HAYES**

v.

**PLANTATIONS STEEL COMPANY.**

**No. 79–430–Appeal.**

Supreme Court of Rhode Island.

Jan. 6, 1982.

---

Keven A. McKenna, Cheryl A. Asquino, Providence, for plaintiff.

DeSimone & Del Sesto, Herbert F. DeSimone, Ronald W. Del Sesto, Providence, for defendant.

## OPINION

SHEA, Justice.

The defendant employer, Plantations Steel Company (Plantations), appeals from

a Superior Court judgment for the plaintiff employee, Edward J. Hayes (Hayes). The trial justice, sitting without a jury, found that Plantations was obligated to Hayes on the basis of an implied-in-fact contract to pay him a yearly pension of $5,000. The award covered three years in which payment had not been made. The trial justice ruled, also, that Hayes had made a sufficient showing of detrimental reliance upon Plantations's promise to pay to give rise to its obligation based on the theory of promissory estoppel. The trial justice, however, found in part for Plantations in ruling that the payments to Hayes were not governed by the Employee Retirement Income Security Act, 29 U.S.C.A. §§ 1001–1461 (West 1975), and consequently he was not entitled to attorney's fees under § 1132(g) of that act. Both parties have appealed.

We reverse the findings of the trial justice regarding Plantations's contractual obligation to pay Hayes a pension. Consequently we need not deal with the cross-appeal concerning the award of attorney's fees under the federal statute.

Plantations is a closely held Rhode Island corporation engaged in the manufacture of steel reinforcing rods for use in concrete construction. The company was founded by Hugo R. Mainelli, Sr., and Alexander A. DiMartino. A dispute between their two families in 1976 and 1977 left the DiMartinos in full control of the corporation. Hayes was an employee of the corporation from 1947 until his retirement in 1972 at age of sixty-five. He began with Plantations as an "estimator and draftsman" and ended his career as general manager, a position of considerable responsibility. Starting in January 1973 and continuing until January 1976, Hayes received the annual sum of $5,000 from Plantations. Hayes instituted this action in December 1977, after the then company management refused to make any further payments.

Hayes testified that in January 1972 he announced his intention to retire the following July, after twenty-five years of continuous service. He decided to retire because he had worked continuously for fifty-one

years. He stated, however, that he would not have retired had he not expected to receive a pension. After he stopped working for Plantations, he sought no other employment.

Approximately one week before his actual retirement Hayes spoke with Hugo R. Mainelli, Jr., who was then an officer and a stockholder of Plantations. This conversation was the first and only one concerning payments of a pension to Hayes during retirement. Mainelli said that the company "would take care" of him. There was no mention of a sum of money or a percentage of salary that Hayes would receive. There was no formal authorization for payments by Plantations's shareholders and/or board of directors. Indeed, there was never any formal provision for a pension plan for any employee other than for unionized employees, who benefit from an arrangement through their union. The plaintiff was not a union member.

Mr. Mainelli, Jr., testified that his father, Hugo R. Mainelli, Sr., had authorized the first payment "as a token of appreciation for the many years of [Hayes's] service." Furthermore, "it was implied that that check would continue on an annual basis." Mainelli also testified that it was his "personal intention" that the payments would continue for "as long as I was around."

Mainelli testified that after Hayes's retirement, he would visit the premises each year to say hello and renew old acquaintances. During the course of his visits, Hayes would thank Mainelli for the previous check and ask how long it would continue so that he could plan an orderly retirement.

The payments were discontinued after 1976. At that time a succession of several poor business years plus the stockholders' dispute, resulting in the takeover by the DiMartino family, contributed to the decision to stop the payments.

The trial justice ruled that Plantations owed Hayes his annual sum of $5,000 for the years 1977 through 1979. The ruling implied that barring bankruptcy or the cessation of business for any other reason,

Hayes had a right to expect continued annual payments.

The trial justice found that Hugo Mainelli, Jr.'s statement that Hayes would be taken care of after his retirement was a promise. Although no sum of money was mentioned in 1972, the four annual payments of $5,000 established that otherwise unspecified term of the contract. The trial justice also found that Hayes supplied consideration for the promise by voluntarily retiring, because he was under no obligation to do so. From the words and conduct of the parties and from the surrounding circumstances, the trial justice concluded that there existed an implied contract obligating the company to pay a pension to Hayes for life. The trial justice made a further finding that even if Hayes had not truly bargained for a pension by voluntarily retiring, he had nevertheless incurred the detriment of foregoing other employment in reliance upon the company's promise. He specifically held that Hayes's retirement was in response to the promise and held also that Hayes refrained from seeking other employment in further reliance thereon.

█ The findings of fact of a trial justice sitting without a jury are entitled to great weight when reviewed by this court. His findings will not be disturbed unless it can be shown that they are clearly wrong or that the trial justice misconceived or overlooked material evidence. *Lisi v. Marra,* R.I., 424 A.2d 1052 (1981); *Raheb v. Lemenski,* 115 R.I. 576, 350 A.2d 397 (1976). After careful review of the record, however, we conclude that the trial justice's findings and conclusions must be reversed.

Assuming for the purpose of this discussion that Plantations in legal effect made a promise to Hayes, we must ask whether Hayes did supply the required consideration that would make the promise binding? And, if Hayes did not supply consideration, was his alleged reliance sufficiently induced by the promise to estop defendant from denying its obligation to him? We answer both questions in the negative.

We turn first to the problem of consideration. The facts at bar do not present the case of an express contract. As the trial justice stated, the existence of a contract in this case must be determined from all the circumstances of the parties' conduct and words. Although words were expressed initially in the remark that Hayes "would be taken care of," any contract in this case would be more in the nature of an implied contract. Certainly the statement of Hugo Mainelli, Jr., standing alone is not an expression of a direct and definite promise to pay Hayes a pension. Though we are analyzing an implied contract, nevertheless we must address the question of consideration.

█ Contracts implied in fact require the element of consideration to support them as is required in express contracts. The only difference between the two is the manner in which the parties manifest their assent. *J. Koury Steel Erectors, Inc. v. San-Vel Concrete Corp.,* R.I., 387 A.2d 694 (1978); *Bailey v. West,* 105 R.I. 61, 249 A.2d 414 (1969). In this jurisdiction, consideration consists either in some right, interest, or benefit accruing to one party or some forbearance, detriment, or responsibility given, suffered, or undertaken by the other. *See Dockery v. Greenfield,* 86 R.I. 464, 136 A.2d 682 (1957); *Darcey v. Darcey,* 29 R.I. 384, 71 A. 595 (1909). Valid consideration furthermore must be bargained for. It must induce the return act or promise. To be valid, therefore, the purported consideration must not have been delivered before a promise is executed, that is, given without reference to the promise. *Plowman v. Indian Refining Co.,* 20 F.Supp. 1 (E.D.Ill.1937). Consideration is therefore a test of the enforceability of executory promises, *Angel v. Murray,* 113 R.I. 482, 322 A.2d 630 (1974), and has no legal effect when rendered in the past and apart from an alleged exchange in the present. *Zanturjian v. Boornazian,* 25 R.I. 151, 55 A. 199 (1903).

█ In the case before us, Plantations's promise to pay Hayes a pension is quite clearly not supported by any consideration supplied by Hayes. Hayes had announced his intent to retire well in advance of any promise, and therefore the intention to

retire was arrived at without regard to any promise by Plantations. Although Hayes may have had in mind the receipt of a pension when he first informed Plantations, his expectation was not based on any statement made to him or on any conduct of the company officer relative to him in January 1972. In deciding to retire, Hayes acted on his own initiative. Hayes's long years of dedicated service also is legally insufficient because his service too was rendered without being induced by Plantations's promise. *See Plowman v. Indian Refining Co., supra.*

Clearly then this is not a case in which Plantations's promise was meant to induce Hayes to refrain from retiring when he could have chosen to do so in return for further service. 1 *Williston on Contracts,* § 130B (3d ed., Jaeger 1957). Nor was the promise made to encourage long service from the start of his employment. *Weesner v. Electric Power Board of Chattanooga,* 48 Tenn.App. 178, 344 S.W.2d 766 (1961). Instead, the testimony establishes that Plantations's promise was intended "as a token of appreciation for [Hayes's] many years of service." As such it was in the nature of a gratuity paid to Hayes for as long as the company chose. In *Spickelmier Industries, Inc. v. Passander,* 172 Ind.App. 49, 359 N.E.2d 563 (1977), an employer's promise to an employee to pay him a year-end bonus was unenforceable because it was made after the employee had performed his contractual responsibilities for that year.

The plaintiff's most relevant citations are still inapposite to the present case. *Bredemann v. Vaughan Mfg. Co.,* 40 Ill.App.2d 232, 188 N.E.2d 746 (1963), presents similar yet distinguishable facts. There, the appellate court reversed a summary judgment granted to the defendant employer, stating that a genuine issue of material fact existed regarding whether the plaintiff's retirement was in consideration of her employer's promise to pay her a lifetime pension. As in the present case, the employer made the promise one week prior to the employee's retirement, and in almost the same words. However, *Bredemann* is distinguishable be-cause the court characterized that promise as a concrete offer to pay *if she would retire immediately.* In fact, the defendant wanted her to retire. *Id.* 188 N.E.2d at 749. On the contrary, Plantations in this case did not actively seek Hayes's retirement. DiMartino, one of Plantations's founders, testified that he did not want Hayes to retire. Unlike *Bredemann,* here Hayes announced his unsolicited intent to retire.

■ Hayes also argues that the work he performed during the week between the promise and the date of his retirement constituted sufficient consideration to support the promise. He relies on *Ulmann v. Sunset-McKee Co.,* 221 F.2d 128 (9th Cir. 1955), in which the court ruled that work performed during the one-week period of the employee's notice of impending retirement constituted consideration for the employer's offer of a pension that the employee had solicited some months previously. But there the court stated that its prime reason for upholding the agreement was that sufficient consideration existed in the employee's consent not to compete with his employer. These circumstances do not appear in our case. Hayes left his employment because he no longer desired to work. He was not contemplating other job offers or considering going into competition with Plantations. Although Plantations did not want Hayes to leave, it did not try to deter him, nor did it seek to prevent Hayes from engaging in other activity.

Hayes argues in the alternative that even if Plantations's promise was not the product of an exchange, its duty is grounded properly in the theory of promissory estoppel. This court adopted the theory of promissory estoppel in *East Providence Credit Union v. Geremia,* 103 R.I. 597, 601, 239 A.2d 725, 727 (1968) (quoting 1 Restatement *Contracts* § 90 at 110 (1932)) stating:

"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbear-

ance is binding if injustice can be avoided only by enforcement of its promise."

In *East Providence Credit Union* this court said that the doctrine of promissory estoppel is invoked "as a substitute for a consideration, rendering a gratuitous promise enforceable as a contract." *Id.* To restate the matter differently, "the acts of reliance by the promisee to his detriment [provide] a substitute for consideration." *Id.*

Hayes urges that in the absence of a bargained-for promise the facts require application of the doctrine of promissory estoppel. He stresses that he retired voluntarily while expecting to receive a pension. He would not have otherwise retired. Nor did he seek other employment.

We disagree with this contention largely for the reasons already stated. One of the essential elements of the doctrine of promissory estoppel is that the promise must *induce* the promisee's action or forbearance. The particular act in this regard is plaintiff's decision whether or not to retire. As we stated earlier, the record indicates that he made the decision on his own initiative. In other words, the conversation between Hayes and Mainelli which occurred a week before Hayes left his employment cannot be said to have induced his decision to leave. He had reached that decision long before.

An example taken from the restatement provides a meaningful contrast:

"2. A promises B to pay him an annuity during B's life. B *thereupon* resigns profitable employment, *as A expected* that he might. B receives the annuity for some years, in the meantime becoming disqualified from again obtaining good employment. A's promise is binding." (Emphasis added.) 1 Restatement *Contracts* § 90 at 111 (1932).

In *Feinberg v. Pfeiffer Co.*, 322 S.W.2d 163 (Mo.App.1959), the plaintiff-employee had worked for her employer for nearly forty years. The defendant corporation's board of directors resolved, in view of her long years of service, to obligate itself to pay "retirement privileges" to her. The resolution did not require the plaintiff to retire. Instead, the decision whether and when to retire remained entirely her own. The board then informed her of its resolution. The plaintiff worked for eighteen months more before retiring. She sued the corporation when it reduced her monthly checks seven years later. The court held that a pension contract existed between the parties. Although continued employment was not a consideration to her receipt of retirement benefits, the court found sufficient reliance on the part of the plaintiff to support her claim. The court based its decision upon the above restatement example, that is, the defendant informed the plaintiff of its plan, and the plaintiff in reliance thereon, retired. *Feinberg* presents factors that also appear in the case at bar. There, the plaintiff had worked many years and desired to retire; she would not have left had she not been able to rely on a pension; and once retired, she sought no other employment.

However, the important distinction between *Feinberg* and the case before us is that in *Feinberg* the employer's decision definitely shaped the thinking of the plaintiff. In this case the promise did not. It is not reasonable to infer from the facts that Hugo R. Mainelli, Jr., expected retirement to result from his conversation with Hayes. Hayes had given notice of his intention seven months previously. Here there was thus no inducement to retire which would satisfy the demands of § 90 of the restatement. Nor can it be said that Hayes's refraining from other employment was "action or forbearance of a definite and substantial character." The underlying assumption of Hayes's initial decision to retire was that upon leaving the defendant's employ, he would no longer work. It is impossible to say that he changed his position any more so because of what Mainelli had told him in light of his own initial decision. These circumstances do not lead to a conclusion that injustice can be avoided only by enforcement of Plantations's promise.

Hayes received $20,000 over the course of four years. He inquired each year about whether he could expect a check for the following year. Obviously, there was no absolute certainty on his part that the pension would continue. Furthermore, in the face of his uncertainty, the mere fact that payment for several years did occur is insufficient by itself to meet the requirements of reliance under the doctrine of promissory estoppel.

For the foregoing reasons, the defendant's appeal is sustained and the judgment of the Superior Court is reversed. The papers of the case are remanded to the Superior Court.