DECISION
This is an administrative appeal from a decision of the Department of Human Services (hereinafter "DHS"), dated October 11, 1994, in which Mary Amaral (hereinafter "the applicant") was denied Medical Assistance benefits. Jurisdiction in this Court is pursuant to R.I.G.L. 1956 (1993 Reenactment) § 42-35-15.
Facts/Travel
On March 17, 1994, a DHS caseworker conducted an initial intake interview with Florence Perry (hereinafter "Ms. Perry") who had filed a Medical Assistance application with DHS on behalf of the applicant, who is her ninety-six (96) year old mother. During the course of the interview, it was revealed that the applicant and Ms. Perry had maintained a bank account at a division of Old Stone Bank known as the Guild from July 6, 1992 up until August 4, 1993. The joint account (#067973013970-6) was titled "joint tenancy account with right of survivorship." The source of the funds of this account was the sale of the applicant's house in 1963. Ms. Perry testified that in exchange for providing care, food and shelter, the applicant agreed "that because she's [the applicant] coming to live with me [Ms. Perry], that everything she had was mine." Tr. at 6. The applicant and Ms. Perry also supplied statements which revealed that mother and daughter "set up several joint accounts and there was an understanding between us that if applicant needed the money for my own purposes, i.e., clothing, gifts, etc., that I would withdraw the funds. Any money that was remaining would go to my daughter in compensation for her care of me." See Forms AP-95 and AP-95A. On August 4, 1993, the assets in the subject account were transferred to an account with the same maturity date but in Ms. Perry's name alone. See Letter from Catherine Derderian, Guild Bank, to Judi Ziemer dated March 23, 1994. After the intake interview, the applicant was allowed an opportunity to rebut the presumption that funds held in the joint account were not in her control. See Memorandum from Mary Ann Cooney dated April 25, 1994.
A letter of denial dated April 28, 1994 was sent to the applicant. Such letter cited a prohibited transfer of assets in violation of DHS Manual § 366 which rendered the applicant ineligible for Medical Assistance for fourteen (14) months. Such decision was appealed within the agency.
On July 13, 1994, a hearing was held before DHS Appeals Officer Alan Lemery. At the hearing, Ms. Perry testified that the money in the joint account was from the sale of her mother's house in the mid-sixties and that the applicant's social security number was on the account. Tr. at 4, 7. She further testified that at that time, her mother went to live with Ms. Perry and that in return for her care, the two women agreed that everything the applicant had would be Ms. Perry's. Tr. at 6. Ms. Perry stated that in July 1993 she transferred the funds in the joint account to an account in her own name and social security number because she was now sixty-five and retired and would receive an extra tax exemption. Tr. at 9, 10.
Claudia McNally, a DHS caseworker supervisor, then testified regarding what transpired at Ms. Perry's intake interview with Judi Ziemer, the applicant's caseworker. She testified that Ms. Perry stated that she considered the money to be her mother's, that she had no problem spending it for her mother's care and that she was going through the rebuttal process because she had been advised to do so by her lawyer. Tr. at 16. Mary Ann Cooney, a Senior Health Insurance Specialist at the DHS, testified about the decision she rendered denying the applicant benefits which stated that the rebuttal as to the ownership of the funds was unsuccessful. Tr. at 20. She stated that while the rebuttal documents submitted showed Ms. Perry had access to the funds, they did not sufficiently prove ownership and that the applicant continued to have control over the funds in the joint account. Tr. at 22, 24.
Ms. Perry was then called to testify in rebuttal regarding her comments at the intake interview with Judi Ziemer. She stated that at the time of the interview she was very upset about her mother going into a nursing home she had not chosen and she couldn't really remember what she said. Tr. at 28, 29. Mark Perry, Ms. Perry's son and grandson of the applicant, testified that his mother was very upset about his grandmother being sent to another nursing home and the thought his mother was on medication at the time of the interview. Tr. at 30.
A decision was rendered by the Appeals Officer on October 11, 1994. See DHS Decision dated October 11, 1994. Such decision stated that the August 9, 1993 transfer of funds from the joint account in the names of Ms. Perry and the applicant to an account solely in the name of Ms. Perry was a prohibited transfer as set out in the DHS Agency Policy Manual at § 0366. Id. The Appeals Officer found that the evidence did not prove the transfer was done pursuant to a binding contract to receive fair market value or other valuable compensation/consideration or exclusively for some other purpose than to qualify for medical assistance. Id at 17. Accordingly, the appeals officer upheld the fourteen (14) month period of ineligibility assessed by the DHS. Decision at 18. The applicant timely appealed to this Court.
Standard of Review
The review of a decision of the Commission by this Court is controlled by R.I.G.L. § 42-35-15(g) which provides for review of a contested agency decision:
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case or further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
This section precludes a reviewing court from substituting its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict of Interest Commission,509 A.2d 453, 458 (R.I. 1986). Therefore, this Court's review is limited to determining whether substantial evidence exists to support the Commission's decision. Newport Shipyard v. RhodeIsland Commission for Human Rights, 484 A.2d 893 (R.I. 1984). "Substantial evidence" is that which a reasonable mind might accept to support a conclusion. Id. at 897. (quoting Caswell v.George Sherman Sand Gravel Co., 120 R.I. 1981, 424 A.2d 646, 647 (1981)). This is true even in cases where the court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than the agency. Berberian v. Dept.of Employment Security, 414 A.2d 480, 482 (R.I. 1980). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. Coastal Resources Management Council,434 A.2d 266, 272 (R.I. 1981). However, questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts.Carmody v. R.I. Conflict of Interests Commission, 509 A.2d at 458.
On appeal, appellant contends such funds in the joint account belonged to Ms. Perry before the transfer pursuant to their oral contract. Alternatively, appellant contends that such transfer of funds as pursuant to a binding contract in return for care she provided to her mother.
Joint Account
In order to be financially eligible for Medical Assistance ("MA"), an individual must have countable income and resources within SSI limits. A resource is either real or personal property which the applicant/recipient can use (either directly or by sale or conversion) to provide for his/her basic needs for food, clothing, shelter or medical care. DHS Manual, § 0354.10. A countable resource is one "available" to the applicant and "a resource is considered to be available both when actually available, and when the applicant has the legal ability to make such sum available for support and maintenance." DHS Manual, § 0354.30. However, income and resources are not considered available ". . . . when a legal impediment exists which precludes the applicant from making the resource available. Id.
In regard to funds in a checking or savings account, "the determination of accessibility does not fall upon the individual but depends upon the LEGAL STRUCTURE of the account." DHS Manual § 0356.15.10.18. "Where an applicant is a joint holder of a bank account and is legally able to withdraw funds from that account, [s]he is considered to have unrestricted access to the funds. Id.
Further, where an applicant is a joint account holder who has unrestricted access to the funds in the account, "all of the funds in the account are presumed to be the resources of the applicant." DHS Manual, § 0356.15.10.10.
However, an applicant may submit evidence in order to rebut the presumption, with a successful rebuttal resulting in a finding that such funds are the resource of the applicant. Id. To successfully rebut ownership of joint account funds, the applicant must submit the following evidence: 1) a statement by the applicant on an AP-92 form . . . giving his/her delegation regarding the funds, the reason for establishing the joint account, the date the account was made joint, the source of the funds, who made deposits and the source of the deposits, who made withdrawals from the account, how the withdrawals were spent, whose social security number was on the account; ii) corroborating statements [on form AP-92A] from other account holders; iii) evidence of the establishment of a new account in the applicant's name and with the applicant's funds or the deletion of the applicant's name from the subject account, and iv) all available documentary evidence to support the statements in the AP-92 and AP-92A. DHS Manual, § 0356.15.10.24. In effect, the provision allows accessibility or ownership to be rebutted by a person who pursuant to the "legal structure" of a joint account possesses unrestricted ownership but does not consider himself/herself an owner of the funds (either fully or partially). See DHS Manual, § 0356.15.10.20.
The resources at issue were contained in an account entitled "joint tenancy account with right of survivorship." Accordingly, the presumption that the applicant has unrestricted access to all funds in the account has attached.
In order to rebut this presumption the applicant has offered the explanation that the agreement between her and Ms. Perry regarding her care is an enforceable contract and, as such, Ms. Perry, not the applicant, is the rightful owner of the money in the bank account. See AP-92 form. In support of this contention, the applicant has submitted her AP-92 form, Ms. Perry's AP-92A form, as well as bank records documenting withdrawals from the Guild Bank account and deposits into an account kept by Ms. Perry at East Providence Teacher's Credit Union.
DHS found this rebuttal of ownership to be unsuccessful.See Letter of Denial dated March 28, 1995. The agency had substantial evidence before it to support this finding. The record reveals that the source of the funds was from the sale of applicant's house. Tr. at 6. Such money was placed in a bank account with both the applicant's and Ms. Perry's names on it and with the applicant's social security number listed. Tr. at 7. The agency also had evidence before it that the applicant could withdraw whatever money was necessary for her own purposes. See
AP-92 form. Further, Claudia McNally from DHS testified that Ms. Perry stated at the intake interview that the money in the joint account was her mother's and she never considered the money to be her own. Tr. at 16. And while the bank records provided for rebuttal show withdrawals from the Guild Bank account by Ms. Perry and deposits into the second account at the credit union, based on the other evidence in the record, the agency was not clearly erroneous in finding that such activity only showed access to the funds and not ownership. Accordingly, as there was substantial evidence on which to base DHS's finding of resource ownership, this Court will not now disturb such finding.
Transfer of Resources
In its decision letter dated April 28, 1994, the DHS found the applicant was not eligible for Medical Assistance for fourteen (14) months because of a transfer of assets proscribed by § 366 of the DHS manual. In response to this finding, the applicant argues that the changing of the names on the joint bank account was not a "transfer" because such funds were Ms. Perry's in that they were in consideration for the services provided to the applicant for the thirty (30) years prior. The agent found that a valid binding contract did not exist and, as such, the transfer was proscribed and the applicant should be penalized accordingly.
DHS Manual provides that: "any transfer of resources is presumed o have been for the purpose of establishing eligibility for Medical Assistance Payment the costs of institutional care." However, exceptions to ineligibility for transfers are provided for in the manual, which include:
 C. The individual can prove his/her intention was to receive fair market value or other valuable compensation/consideration.
 D. The individual can prove the transfer was exclusively for some other purpose than to qualify for Medical Assistance.
DHS Manual at § 0384.
It is well-settled that contracts require the element of consideration. Hayes v. Plantations Steel, Co., 438 A.2d 1091
(R.I. 1982) (citing J. Koury Steel Erectors, Inc. v. San-VelConcrete Corp., 387 A.2d 694 (R.I. 1948)); Bailey v. West,105 R.I. 61, 249 A.2d 414 (1969). In order to constitute consideration, a promise or return promise must be bargained for. A promise or return promise is bargained for if it is sought by the promisor in exchange for that promise. Restatement (Second) of Contracts, § 71.
The DHS Appeals Officer found that a valid contract did not exist stating:
 While the appellant may have intended to compensate her daughter FCC the care she had received for almost thirty years, and while the daughter had delivered such compensation in August 1993, I find that it was not done pursuant to a binding contract.
Decision at 17. In effect, the applicant failed to prove her intention was to receive fair market value or other valuable compensation/consideration relative to the transfer of resources. While the applicant may have intended to leave her daughter whatever remained in the joint bank account at her death, the agency found that the evidence was insufficient to prove that there was a meeting of the minds sufficient to support a finding of a binding contract. The Appeals Officer further noted that given the applicants advanced age and health, the evidence presented did not rebut the presumption that the transfer was not exclusively for a purpose other than qualifying for medical benefits.
In support of this finding by the agency, the DHS Appeals Officer had before him substantial evidence. On the applicant's AP-92 form and her daughter's AP-92A form, it was stated that "there was an understanding between us that if I needed the money for my own purposes, i.e., schooling, gifts, etc., that . . . [the applicant] would withdraw the funds. Any money that was remaining would go to [Ms. Perry] in compensation for her taking care of [the applicant] . . . " See AP-92 form; See also AP-92A form. The record also indicates that during the intake interview, Ms. Perry had stated that she had always considered the money in the joint account to be her mother's and that she did not consider it her own. See Rebuttal Information Coversheet dated 3/30/94. Further, the funds from the sale of the applicant's house remained in a joint account until less than a year before she applied for Medical Assistance benefits. See Letter from Guild Bank to Judi Ziemer dated March 23, 1994. The record also indicates that the applicant was ninety-six (96) years old at the time of the initial intake interview and, at that time, her declining health made it necessary to place her in a nursing home. Tr. at 11. Based on the above evidence, the Appeals Officer did not err by finding that the transfer was not to receive valuable compensation or not exclusively for a purpose other than to qualify for Medical Assistance.
Conclusion
After review, this Court finds that the decision of the DHS was supported by the reliable, probative and substantial evidence on the whole record. Accordingly, the agency's decision finding that applicant was ineligible for medical assistance for fourteen (14) months for a transfer of resources prohibited by the DHS Manual at § 0366 is upheld.
Counsel shall submit the appropriate judgment for entry.