DECISION
Presently before the Court is the Plaintiff's Motion for Entry of Judgment. The Defendant, City of Providence ("City"), has objected to the motion. There being no material facts in dispute, this Court will herein render an opinion on the merits.
 Facts/Travel
On December 23, 1992, Elmgrove Associates granted a mortgage to First Bank and Trust Company ("Plaintiff") involving property located at 533-547 Hartford Avenue and 195-197 Glenbridge Avenue in Providence, Rhode Island. The property is more particularly described as Tax Assessor's Plat 113, Lots 232, 233, 234, 235, and 236. On March 28, 2000, the Plaintiff was notified by the City that it would be selling the above property at tax sale on May 18, 2000 for the nonpayment of real estate taxes for the years 1995 through 1999. On May 17, 2000, one day prior to the scheduled tax sale, Elmgrove Associates executed and delivered to the Plaintiff a deed conveying the property to the Plaintiff. The deed was recorded in Providence on May 17, 2000 at 2:07 p.m. After the recording, the Plaintiff then paid to the City Collector five (5) checks totaling $18,040.00. Each check had a notation specifying that the amount on the check represented the payment for outstanding taxes for the years 1998 and 1999, including interest. One check was written for each of the five lots.
The Plaintiff acknowledges that its intent in obtaining the deed from Elmgrove Associates was to terminate any tax liens prior to and including 1997. However, on the following day, May 18, 2000, the City went forward with the scheduled tax sale. Lots 232 and 236 were sold to co-defendant Bears Brothers Realty, a Rhode Island general partnership; lot 235 was sold to co-defendant James J. DiStefano, Inc. Pension Trust; lot 234 was sold to co-defendant Title Investments; Lot 233 was sold to co-defendant Mount Hope Realty. The Plaintiff then, on May 30, 2000, filed a complaint requesting that the Court declare that upon the recording of the deed on May 17, 2000, the lien of the City for the 1997 real estate taxes and prior years real estate taxes automatically expire, and that the tax sale of the Premises held on May 18, 2000 was void "ab initio." Co-defendants James J. DiStefano, Inc. Pension Trust and Mount Hope Realty have filed crossclaims against the City for the amount paid at the tax sale, if in fact the tax sale is declared void.
 Tax Sales
In Rhode Island, "[m]unicipal taxes that are assessed against a person's real or personal property are a lien against his real estate for a period for at least three years." Picerne v. Sylvestre, 324 A.2d 617, 618 (R.I. 1974). A tax lien is created pursuant to R.I.G.L. § 44-9-1, which states in full:
Tax lien on real estate. —
(a) Taxes assessed against any person in any town for either personal property or real estate shall constitute a lien on the real estate. The lien shall arise and attach as of the date of assessment of the taxes, as defined in § 44-5-1.[1]
(b) The lien shall terminate at the expiration of three (3) years thereafter if the real estate has in the meantime been alienated and the instrument alienating the estate has been recorded; otherwise, it shall continue until a recorded alienation of the estate. The lien shall be superior to any other lien, encumbrance, or interest in the real estate whether by mortgage, attachment, or otherwise, excepts easements and restrictions.
"The authority for the sale of real estate for delinquent taxes must be found in the statutes and such statutes will not be enlarged by judicial construction but will be strictly construed in favor of the owner."
Parker v. MacCue, 172 A. 725, 726 (R.I. 1934). "A sale [or transfer] made after the three-year statutory period but before an attempted enforcement of a tax lien serves to block the enforcement."
Fitzpatrick v. Tri-Mar Industries, Inc., 723 A.2d 285, 286 (R.I. 1999). As a result, after ownership of the property has been transferred or alienated, any outstanding taxes that are due beyond the three years are not considered a valid lien, but "merely an unsecured tax obligation." Id.
In the present case, the Plaintiff was deeded the property one day before the scheduled tax sale.[2] It then paid the City Collector an amount of money which represented the taxes that were due for 1998 and 1999. Although the Plaintiff intended that the checks be applied to the 1998 and 1999 taxes, the City claims that its policy is to apply any payment to the oldest outstanding taxes first. As a result, the City still conducted its tax sale and the property was sold for the "balance of the 1997 taxes as well as the outstanding 1998 and 1999 taxes."
The City first claims that after a tax sale, "municipalities have little or no remaining role under the statutory scheme which has as its primary purpose the expeditious payment of taxes without further costly municipal involvement in litigation." This simply is not the case. Section 44-9-8.2 clearly points out that after the deed of taking is recorded the "[t]itle to the land taken shall vest in the town, subject to the right of redemption." It also provides that "[t]he title shall, until redemption or until the right of redemption is foreclosed, be held as security for the repayment of the taxes with all intervening costs, terms imposed for redemption, and charges, with interest." Therefore, the City certainly has an interest in the outcome of this case in that if the tax sale is declared void, then it is divested of title and is subject to reimbursing the purchasers at the tax sale.
The City correctly notes that one intent of the Legislature in creating Title 44, Chapter 9 was to provide an inexpensive, expeditious mechanism for towns to safeguard itself when collecting taxes.
Another purpose of the statute, however, that the City fails to recognize, is to encourage cities and towns to perform its tax sales and collection process before the expiration of three years from the date of assessment. Anytime after the expiration of three years, a city or town runs the risk of losing its secured lien on the property if that property is sold, transferred or alienated. The City argues that once the sale is "noticed and the statutory process is underway, the sale is immune from the machinations of the taxpayer." The City has not offered, however, and this Court is unable to locate, any statute or case law which would support this position. The property in question was sold to the Plaintiff prior to the tax sale. According to R.I.G.L. § 44-9-1, any secured lien that the City possessed that attached beyond the three year limit was terminated when the Plaintiff recorded the deed. From the time the deed to the Plaintiff was recorded, the City no longer possessed a lien on the property for the years 1995, 1996 and 1997. Instead, it held merely a tax obligation from the previous owner, Elmgrove Associates.[3]
Therefore, because the Plaintiff paid the 1998 and 1999 taxes prior to the tax sale, the tax sale purporting to sell the property for nonpayment of those years' taxes is void. As a result, the title of the property should remain in the Plaintiff's name, the checks should be credited towards the 1998 and 1999 tax years, and the City should reimburse the purchase price to the co-defendants who purchased lots at the tax sale.
Counsel shall submit an appropriate order for entry.
[1] R.I.G.L. § 44-5-1 provides in part that "[t]he tax is apportioned upon the assessed valuations as determined by the assessors of the town as of December 31 in each year at 12:00 A.M. Midnight, the date being known as the date of assessment of town valuations."
[2] The City argues that the transaction was a "sham alienation," and that an actual, arms-length transfer of the property is required to trigger the termination statute intended by the Legislature. This Court has reviewed the deed, however, and can find no reason to find the deed void or deficient in any manner. The deed is signed, notarized, and, although this Court is unaware of the exact deal of the transfer, it appears to contain consideration (i.e.: property in exchange for forbearance and release of the mortgage). See Hayes v. Plantations Steel Co., 438 A.2d 1091, 1094 (R.I. 1982) ("In this jurisdiction, consideration consists either in some right, interest, or benefit accruing to one party or some forbearance, detriment, or responsibility given, suffered, or undertaken by the other.") (citations omitted).
[3] There is nothing in the statute that suggests a subsequent owner of a property is responsible for the back taxes of a previous owner. In fact, the statute suggests the opposite. The Legislature included the three year limitation in R.I.G.L. § 44-9-1 in order to encourage towns and cities to collect its taxes within a reasonable amount of time. That provision also encourages, as the City points out, the alienation of property.