DECISION
This declaratory judgment proceeding is before the Court for decision on the narrow issue of whether the retirement system may charge regular interest (at 5 percent) compounded annually to the date of payment for the purchase of service credits for time spent as a per diem substitute teacher if such purchase occurs more than 12 months following the teacher becoming a member of the retirement system. If interest, at the rate aforesaid (or at some other rate) may be charged, as between defendant Providence School Board and plaintiffs Larson and Quinn (and by inference other Providence teachers similarly situated), who should bear the cost of such interest?
Basically, the evidence before the Court demonstrates that in 1948 the General Assembly created a statewide retirement system for school teachers of Rhode Island's cities and towns (Title 16, Chapter 16 et seq. of the Rhode Island General Laws). The Teachers' Retirement System was patterned after and engrafted in and onto the Employees' Retirement System of the State of Rhode Island.
Teachers who have vested in the system are entitled to a life annuity in an amount equal to between 1.6 percent and 3 percent per year of service of teacher's average highest three consecutive years of compensation, multiplied by the number of years of total service. A teacher is eligible to retire and receive such pension upon: 1) attaining the age of 60 with at least 10 years of total service, or 2) regardless of age, having completed 28 years of total service.
The case at bar generally deals with certain Providence teachers who were per diem substitute teachers and who, during an applicable school year, worked not less than three quarters of the number of days that, by law, the public schools were required to be in session (180 days ÷ 3/4 = 135 days).
Section 16-16-1(11) provides that a teacher who works that number of days shall receive one year of credit in the retirement system. Further complicating the situation is the fact that per diem substitutes in Providence (those who work less than 135 days) are compensated at the rate, for example, of $55.00 per day for each day worked from which are deducted state and federal taxes. Upon completing 135 days, such teacher becomes a member of the union as well as a member of the retirement system and is compensated on a going-forward basis at the appropriate step annual salary level provided in the Collective Bargaining Agreement between defendant School Board and plaintiff Union. From and after the 135th day worked by such a per diem in any school year, the School Board is required to deduct employee's contribution to the retirement system and to make employer's contribution on all of teacher's earnings. Finally, at that time the teacher becomes entitled to a retroactive payment in an amount equal to the difference between the step one salary for the days that teacher was paid the per diem rate minus the amount actually paid teacher (i.e. 134 x $55.00 = $7,370.00).
The evidence indicates that, as to per diem teachers, appropriate reporting and payments to the retirement system are made with respect to the post 134th day salary and as to the retroactive payment, but that no payment report is made with respect to the $7,370 sum aforesaid.
The statutory scheme permits teachers, such as plaintiffs here, to purchase retirement system service credits for prior service by paying into the system the amount such teacher would have contributed to the system had they been a member, together with ". . . regular interest compounded annually to date of payment. . . ."[1] "Regular interest" is a term defined by § 36-8-1(13) of the General Laws as ". . . two percent per annum, compounded annually or at such rate determined from theactual experience of the system as may be prescribed from time totime by the board."[2] (emphasis added).
From time to time the board has increased the rate of interest, first in January 1966 to four percent, and then in July 1975 to the present five percent rate, in each case, pursuant to the compounding language found in §§ 16-16-5(c) and 36-8-1(13).
Plaintiffs here initially challenge the authority and procedure by which the retirement system, acting through its Retirement Board, set the rate of interest. Plaintiffs concede that regular interest as defined in 36-8-1(13) of the General Laws is "two percent per annum compounded annually or at such rate determined from the actual experience of the system as may be prescribed from time to time by the board." Plaintiffs, however, contend that at least since 1994 the board has been subject to the provisions of the Administrative Procedure Act. (See 42-35-1.1 enacted in 1994, but see also Graveiro v. TheEmployees' Retirement System, 706 A.2d 1353 (R.I. 1998)). Further, plaintiffs point to the provisions of public law 87-330 for the proposition that all rules and regulations of the retirement system theretofore or thereafter established must be compiled, codified and published so that they might generally be available to the members of the system. Plaintiffs contend that there has been no such compilation, codification, and/or publication with respect either to the board's actions in 1966, setting a four percent compound rate, or in 1975, setting a five percent compound rate of interest as the regular rate to be applied pursuant to § 36-8-1(13) read in conjunction with § 16-16-5 (c). The Court notes that the last mentioned rate has stood for over 25 years, apparently without challenge. The Court further notes that the minutes of the board meetings are available to the members of the system.
In any event, there is no apparent case law authority in our state as to whether the act of setting an interest rate pursuant to statutory authority constitutes the creation of a rule or regulation. The statutory basis for the board's action in §36-8-1(13) does not, by its terms, require the adoption or promulgation of a rule or regulation — the General Assembly could have so provided — it did not. The General Assembly has, in certain instances, required the Retirement Board to act by rule, for example, as conceded by plaintiffs, § 16-16-5 (c) provides that by rule, the Retirement Board may provide for the time of payment and the manner of payment (see page 29 of plaintiffs memorandum in support of its verified complaint seeking declaratory judgment injunctive relief and mandamus).
This Court holds that pursuant to the statutory authority cited, and in the exercise of its routine administrative functioning, the board first, in 1966 and then again in 1975, set the interest rates to compound as aforesaid to be applied with respect to the purchase of prior years service credits.
This Court, predicated upon the foregoing analysis, holds that the Retirement Board is vested with the authority from time to time to set a regular rate of interest and, pursuant to that authority, most recently in 1975, set such rate as five percent compounded annually. In lieu of such Retirement Board action the statutory default rate of 2 percent compounded annually would, of course, pertain.
The second issue before the Court involves the question as to who, as between the individual teachers and the Providence School Board under the facts here, should be required to pay interest computed as aforesaid.
Plaintiffs' claim that the School Board should pay such interest as may be due is predicated upon three theories: a) breach of contract, b) promissory estoppel predicated upon the School Board's failure to comply with its internal procedures allegedly to plaintiffs' detriment, and c) estoppel predicated upon intentional wrongful reporting by the School Board to the retirement system to the detriment of the plaintiffs.
The facts giving rise to the plaintiffs' claims are as follows:
As indicated above, per diem teachers in Providence during the applicable times here involved, that is to say between the years 1973 and 1995, received a flat daily payment of, for example, $55.00 a day. Deducted from those salary checks were Federal and State withholdings. Until the 135th day of service, these teachers were neither members of the Union nor members of the retirement system. Accordingly, no member's contribution to the retirement system was deducted with respect to the $55.00 per diem payment. When the School Board reported and paid over to the retirement system monies which it had withheld from teachers who were members of the retirement system, the per diems were not listed. Accordingly, as to the teachers in this category, there was neither reporting nor payment until from and after the 135th day. From and after such day, these teachers were compensated at the applicable step on the pay scale as provided in the applicable Collective Bargaining Agreement. Deductions were taken from their continuing payments during that year, not including deductions as required for the retirement system from that day forward. Also, as provided under the Collective Bargaining Agreement, those teachers who worked for at least three quarters of the school days required by law in a school year in Providence also received a retroactive pay adjustment back to the beginning of the school year — that adjustment would be in a gross amount equal to the step rate as set forth in the Collective Bargaining Agreement for the first 134 days minus the amount already paid to the teachers with respect to those 134 days at, for example, the $55.00 rate hearing referred to, or $7,370. The aforementioned gross amount less applicable deductions including retirement contribution predicated on the difference between the step rate and the per diem rate would be paid in a lump sum to the teacher. That gross amount plus that which was earned from and after the 135th day would be reported by the School Board to the retirement system and the teacher's withheld contribution to the system would be paid over to the retirement system. The net effect, of course, being that the teacher's earnings were underreported to the retirement system by an amount equal to the hypothetical $7,370 used herein as an example. It follows from the foregoing that the teacher's contribution to the retirement system was less than it should have been. It is important to note that the reporting forms utilized by the retirement system do not ask for the number of days worked. The system makes that determination by a mathematical calculation based upon information which it has as to the provisions of the Collective Bargaining Agreement and essentially based upon the amount of salary reported to it as having been paid to a teacher. That calculation determines the service credits earned by such a teacher according to the retirement system records. It should be noted that neither the teacher(s) nor the Union, in the ordinary course, receives copies of the information sent by the School Board to the retirement system.
The evidence indicates that a meeting was convened on or about July 6, 1976 at the offices of the retirement system to address issues incident at least with respect to deductions from the lump sum payment herein before referred to. In attendance were representatives of the School Board, the Teachers' Union and the Retirement System. Following that meeting, a memorandum was authored by the School Department Controller to the School Department's payroll office. Copies of the memorandum which dealt with the meeting were sent to the School Department Personnel Director, one of the School Department's financial officers, to the president of the Union, as well as to its executive secretary. That unsigned memorandum supposedly reduced to writing what had transpired at the meeting and forms the basis for plaintiffs' breach of contract and estoppel claims predicated upon the failure by the School Board to follow its internal procedures. Plaintiffs' claim that the School Board should pay the interest component of any charge imposed upon the teachers for service credit purchases stemming from the matters herein referred to.
While it is axiomatic that in order to formulate a contract there are no strict formalities which must be adhered to, so too is it that when a contract is claimed, the court must be able to find offer, acceptance and consideration. Upon the facts at bar, none of those elements exist here. Nor is there any indication these many years later that anyone intended to be legally bound pursuant to the provisions of that internal memo. There is no indication of the term of the "agreement" or indeed of the authority of anyone present at the meeting to commit any of their principals to any sort of legally binding agreement. Plaintiff simply has failed to make out a contract.
Further review of the memorandum itself discloses, with respect to the School Board's (departments) obligation (if an obligation had been found) to deduct "six percent of the actual amount of the payroll," that the payroll referred to was the retroactive payroll payments to teachers appointed, retroactively, long term substitutes. That is to say, those who had worked more than 134 days, i.e. the real parties in interest here.
With respect to the estoppel arguments asserted by plaintiffs, the Court notes that plaintiffs site to Clauson v.Smith, 823 F.2d 660 (1st Cir. 1987) for the proposition that the School Board may be estopped from denying its liability for the interest here in contention if: 1) defendant knows the facts, 2) defendant intends that its conduct shall be acted on or its actions are such that the plaintiff has the right to believe that defendant so intended, 3) plaintiff must be ignorant of the true facts, and 4) plaintiff relied upon defendant's conduct to the injury of the plaintiff. Plaintiffs also rely upon the restatement of contracts (2d) doctrine of promissory estoppel as adopted by our Supreme Court in East Providence Credit Union v.Jeremia, 239 A.2d 725 at p. 727 (RI 1968): "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which doesinduce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." (emphasis added).
There is no evidence before this Court that any of the deponent plaintiffs acted or failed to act or were induced to act or fail to act in reliance upon the memo or upon some understandings that were reached at the July 6, 1976 meeting or as a result of the memo of the same date. There is no evidence that teacher plaintiffs or other teachers similarly situated (if any) were or would be subjected to an injustice by the School Board's action or inaction under the circumstances and facts herein discussed. There is no evidence before the Court that the Union would have acted differently by way of retirement counseling absent its knowledge of the July 6, 1976 memorandum. It is almost unfathomable to this Court that some 20 plus years later, for the first time, the memo should arise as the basis for claims asserted by teachers of the nature herein asserted.
While not before the Court at this time, the Court is left to wonder as to whether the School Board has caused the employer's contribution to the retirement system to be made with respect to the per diem payments to the teachers herein referred to.
In any event, counsel for the prevailing parties shall prepare and present an order and judgment consistent with this decision declaring that the Retirement Board may impose an interest factor calculated at five percent compounded annually and declare that plaintiff teachers shall be responsible for the same if they desire to purchase credits covering periods during which they served as per diem substitutes as herein set forth. Plaintiffs' other claims for relief each hereby are denied.
[1] Any teacher who serves or who has served during a school year at least three-quarters (3/4) of the number of days that the public schools are required by law to be in session during the year shall be given credit for a year of service for that year. In determining the number of days served by a substitute teacher the total number of days served in any public school of any city or town in the state may be combined for any one school year. Any such teacher shall be entitled to "prior service" credit for service prior to July 1, 1949, provided the teacher shall have been in service during the school year 1949-1950. The teacher shall be entitled to service credit for any year subsequent to July 1, 1949, by making contribution to the retirement system the amount he or she would have contributed to the retirement system, had he or she been a member, plus regular interest compounded annually to date of payment, payable at a time or in such manner as may be provided by the rules of the retirement board.
[2] See also 45-21-2(14) as it relates to the definition of "regular interest" with respect to municipal workers within the retirement system.