DECISION
Before this Court is Defendant Columbia Management Advisors, Inc.'s (Columbia) motion for summary judgment with respect to all of the Plaintiff's claims. The Plaintiff, Kenneth W. Thomae (Thomae), has brought claims for breach of contract, misrepresentation, promissory estoppel, and unjust enrichment. These claims arise from Columbia's decision not to pay an annual bonus to Thomae when he resigned after the fiscal year ended, but before those bonuses were distributed. This case is scheduled for trial beginning on May 14, 2007.
 I Facts and Travel
Thomae had been employed by Columbia or its predecessors[1] for approximately twenty years as an investment manager. (Aff. of Kenneth W. Thomae ¶ 1, Apr. 30, 2007.) During that time, Columbia employed several hundred such managers who were responsible for generating investment decisions for its clients. Id. ¶ 4. In October 2002, Columbia restructured its organization so as to centralize investment decisions.Id. Instead of having hundreds of managers making investment decisions for individual *Page 2 
clients, a small group of managers would create model portfolios for all investments managed by Columbia. This had the effect of reducing the discretion of the investment managers. Id. Thomae was hired to be a part of this small group.
In late 2002, Thomae took a new position with Columbia's "Large Cap Core Equity" team and was charged with preparing model portfolios for its high net worth and mid-market institutional clients. Id. ¶ 5. Colin Moore was Thomae's supervisor, and conducted at least some of the negotiations leading to Thomae's placement in the new position. Both Moore and Thomae understood that the team would be under pressure to "perform" and that failure to "perform" could result in termination. (Thomae Dep. 22-23, Mar. 12, 2007.) However, Thomae was also promised that if he performed well, he would be compensated with a bonus. (Aff. of Colin Moore ¶ 4, Apr. 12, 2007.) Thomae and Columbia do not have a written employment agreement.
Thomae's base salary was approximately $140,000 when he took the job in the fall of 2002. Id. In addition, Columbia paid performance-based bonuses to its investment managers. A manager was evaluated based on his or her performance for each fiscal year, which ran from October 1 to September 30 (performance year). Id. ¶ 5. Columbia customarily paid bonuses in February of the year following the most recent performance year. Id. ¶ 7.
In late November 2003, or early December 2003, Thomae resigned from his position with Columbia and took a position managing investments for a competing firm. Under theories of contract, misrepresentation, promissory estoppel, and unjust enrichment, he now claims entitlement to a bonus for the performance year ending in September 2003. Columbia refused to pay such a bonus because Thomae was not *Page 3 
employed by Columbia in February 2004, when the bonuses were paid to its other employees.
Thomae also claims entitlement to what the parties have referred to as a "salary equalization" bonus. At some point in 2003, after Columbia had hired three new employees for the group, Thomae became dissatisfied with his base salary. In response, supervisor Colin Moore agreed to raise Thomae's salary to the average of the salaries earned by Thomae's peers on the team. Id. ¶ 10. However, because of a policy freezing salaries for 2003, Moore stated that the salary equalization adjustment would be paid as part of the annual bonus in the following February. The parties do not dispute these terms of the arrangement. However, Columbia claims that Thomae is not entitled to this payment because, as with the performance bonus, a condition precedent to receiving this payment was that Thomae be employed in February 2004. Thomae contends that while payment was not to occur until February, he has already earned the payment.
 II Standard of Review
Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as [a] matter of law." Super. Ct. R. Civ. P. Rule 56(c). The Court "does not pass upon the weight or the credibility of the evidence," but instead it must consider the evidence "in a light most favorable to the party opposing the motion." Palmisciano v. Burrillville Racing Ass'n,603 A.2d 317, 320 (R.I. 1992). "If there are no material facts in dispute, the case is ripe for summary judgment." Richard v. Blue Cross BlueShield, 604 A.2d 1260, 1261 (R.I. 1992). However, the Court's role at this stage is only to *Page 4 
identify pertinent factual disputes, and not to resolve those disputes.Rotelli v. Catanzaro, 686 A.2d 91 (R.I. 1996). For that reason, summary judgment is a remedy that should be cautiously applied. Id.
 III Performance Bonus
Columbia contends that the undisputed facts require judgment in its favor on each of the contract, misrepresentation, promissory estoppel, and unjust enrichment claims. The Court will consider whether Thomae may recover a performance bonus under any of these theories.
 A. Breach of Contract
Columbia cites three reasons why Thomae may not recover a performance bonus under his breach of contract claim. First, it contends that any discussions of a bonus were so vague that there was no "meeting of the minds" on the essential terms of the bonus arrangement. Second, even if his early resignation was no barrier, Thomae's performance was poor and did not entitle him to a bonus. Finally, it argues that Thomae did not remain employed until Feburary 2004, when the bonuses were distributed, and such continued employment was a condition precedent to receiving a bonus. See Restatement (Second) of Contracts § 224 (1981) (defining condition precedent as "an event, not certain to occur, which must occur . . . before performance under a contract becomes due").[2] *Page 5 
 1. Meeting of the Minds and Vagueness of Terms
Columbia also argues that because there was no "meeting of the minds" as to how a performance bonus would be calculated, the Court may not enforce any promise to pay that bonus. See, e.g., Edwards v. Cent. Ga.HHS, 558 S.E.2d 815, 817-818 (Ga.Ct.App. 2002) (finding that because an "offer letter did not expressly state the terms under which [plaintiff] would receive a bonus, nor did it specify the exact amount or a set formula for determining the exact amount of the bonus" it was not enforceable).
It is true that any contract is not enforceable unless the parties agree on its essential terms. See, e.g., Restatement (Second) ofContracts § 33(1) (stating that an offer "cannot be accepted so as to form a contract unless the terms of the contract are reasonably certain"). To be reasonably certain, the terms of a contract must provide a basis for determining the existence of a breach as well as for giving an appropriate remedy. Restatement (Second) ofContracts § 33(2). However,
 "the actions of the parties may show conclusively that they have intended to conclude a binding agreement, even though one or more terms are missing or are left to be agreed upon. In such cases courts endeavor, if possible, to attach a sufficiently definite meaning to the bargain." Id. § 33, com. a.
In this case, while the means for computing a bonus was not considered during Thomae's negotiations, both Moore and Thomae clearly contemplated that a performance-based bonus would form part of Thomae's compensation. (Moore Aff. ¶ 4.) Moreover, both parties intended to be bound by their arrangement since Thomae worked for Columbia for approximately one year in the new position. See Restatement (Second) of Contracts § 34(2) (noting that part performance under a contract may remove uncertainty as to *Page 6 
whether a contract enforceable as a bargain has been formed). Therefore, the Court will attempt to give meaning to the bonus provision, if possible. Contractual terms which were not explicit may be implied by examining the course of performance and course of dealing among the parties, as well as usages of trade. See id. § 203(b).[3]
In June 2003, Moore issued a memorandum to affected employees which set out the parameters for calculating annual bonuses. (Ex. 7 to Pl's Obj. to Mot. Summ. J., May 1, 2007.) It provides that investment performance will account for 75 percent of the performance rating, and that peer and management review would account for the other 25 percent.See id. at 1-2. Once the overall ratings of eligible employees were determined, a bonus would be calculated based upon a projected bonus pool. Id. at 2. Once the actual bonus pool was finalized, adjustments to the bonuses would be made. Id. at 2-3.
Therefore, the Court will assume arguendo that, while the specific terms of the bonus arrangement were not originally discussed, the June 2003 memorandum supplied the essential terms of the bonus arrangement and formed part of the agreement between Thomae and Columbia.
 2. Whether Thomae's Performance Warranted a Bonus
Columbia argues that even if a performance bonus was part of Thomae's employment contract, his performance was inadequate to entitle him to a bonus. Thomae disputes that his performance was inadequate.
He points to his recently hired colleagues who received bonuses, and claims that he outperformed those colleagues. The record indicates that Columbia hired three *Page 7 
individuals from a competing firm. Their written contracts provided guaranteed bonuses within a stated range. Moore explains that this was an inducement to leave their prior firm and the bonuses that they would have received at that firm. (Moore Aff. ¶ 9.) Therefore, the fact that they were paid bonuses does not necessarily reflect high performance by Thomae and his team. In fact, these colleagues received bonuses on the low end of their guaranteed range.
Thomae also points to an investment report which purports to show that Thomae was a high performer in his group. (Ex. 8 to Pl's Obj. Mot. Summ. J.) Moore's deposition illustrates that Thomae's reading of the report is not as flattering. (Moore Dep. 71-75.) More importantly, though, Thomae has failed to show that the particular investment report should be used as a basis for calculating his bonus.
Rather, the only methodology which arguably formed part of Thomae's contract was the one described in Moore's June 2003 memorandum. Moore states in his affidavit that, after applying the methodology described in the memorandum, Thomae would not be entitled to a bonus. (Moore Aff. ¶ 16.) Thomae has not contradicted this conclusion with any other evidence based upon that memorandum's methodology. The absence of such evidence is fatal to Thomae's claim for a performance bonus. Therefore, the Court finds that there is no genuine issue of material fact that Thomae is not entitled to a performance bonus under the contract theory.[4] *Page 8 
 B. Misrepresentation
Thomae claims that Columbia is liable for misrepresentation because it promised to pay him a performance bonus and failed to do so. A misrepresentation is defined as "as a manifestation by words or other conduct by one person to another that, under the circumstances, amounts to an assertion not in accord with the facts." Pari v. Pari,558 A.2d 632, 637 (R.I. 1989). However, the assertion must relate to something that is a fact at the time the assertion is made. St. Paul Fire MarineIns. Co. v. Russo Bros., 641 A.2d 1297, 1300 n. 2 (R.I. 1994) (quoting Restatement (Second) of Contracts § 159 com. c at 428 (1981)). Such facts can include past events as well as present circumstances, but not future events. Id. If an assertion is made regarding future events, there may be relief in contract, but not for misrepresentation. Restatement (Second) of Contracts § 159, com. c.
Thomae attempts to avoid summary judgment by alleging that Moore never intended to pay a bonus when he promised to do so. If it is true that Moore never intended to pay the bonus, then he would have committed a misrepresentation because it is reasonable to infer from the making of a promise that the promisor intends to perform. Id. § 171 com. d. A person's state of mind is a fact capable of being misrepresented.Id. § 159 com. d.
However, Thomae cannot prove his claim of misrepresentation simply by demonstrating that Moore failed to pay the bonus. Id. Other circumstances might have arisen — such as Thomae's resignation — which would cause Moore not to perform on the promise. Moreover, Moore might simply have changed his mind, even though he fully intended to perform the promise when he made it. Thomae must set forth some objective *Page 9 
facts regarding Moore's intentions at the time of the promise, by which a fact finder could infer that he never intended to carry out his promise. Because Thomae has failed to do so, Columbia is entitled to summary judgment on the misrepresentation claim.
 C. Promissory Estoppel
Promissory estoppel typically "has been invoked as a substitute for a consideration, rendering a gratuitous promise enforceable as a contract." East Providence Credit Union v. Geremia, 103 R.I. 597, 601,239 A.2d 725, 727 (1968). To establish a claim for promissory estoppel, Thomae must show that there was (1) a clear and unambiguous promise; (2) reasonable and justifiable reliance upon the promise; and (3) detriment to Thomae caused by his reliance on the promise. Filippi v.Filippi, 818 A.2d 608, 626 (R.I. 2003). Thomae claims that the promise of compensation, which included a performance bonus, induced him to leave his former position with Columbia, take the position with the Large Cap Core Equity team, and work with that team for approximately one year before resigning.
In this case, however, the Court is not confronted with the question of whether or not there exists a contract. Clearly, a contract for employment existed between Columbia and Thomae. The consideration for this promise was Thomae's agreement to work for Columbia. The only dispute is whether a bonus was promised and became a term of the contract. See Restatement (Second) of Contracts § 5(2) (defining a term of a contract as "that portion of the legal relations resulting from the promise or set of promises which relates to a particular matter"). Since a contract exists, the doctrine of promissory estoppel has no application to this problem. Therefore, the Court will grant Columbia's motion on the promissory estoppel claim. *Page 10 
 D. Unjust Enrichment
To recover for unjust enrichment, Thomae must prove: (1) that he conferred a benefit upon Columbia; (2) that Columbia appreciated the benefit; and (3) that Columbia accepted the benefit under such circumstances that it would be inequitable for it to retain the benefit without paying the value thereof. See Dellagrotta v. Dellagrotta,873 A.2d 101, 113 (R.I. 2005).
Again, this case involves only the construction of a contract for employment. Thomae agreed to work for Columbia in exchange for a salary, the potential for a performance-based bonus, and perhaps other benefits as well. If there is no contractual entitlement to a performance bonus, however, then there is nothing inequitable about Columbia refusing to pay such a bonus. Thomae still received the agreed salary for his employment, and there was never any guarantee that he would receive a bonus. Moreover, the Court will not engage in an analysis of whether the value of Thomae's work was equivalent to the compensation he received.See Restatement (Second) of Contracts § 79 (stating that, so long as there is consideration for the agreement, there is no requirement of equivalence in the values exchanged"). Therefore, the Court will grant summary judgment in favor of Columbia on the unjust enrichment claim.
 IV Salary Equalization Bonus
Columbia also seeks summary judgment on each of the contract, misrepresentation, promissory estoppel, and unjust enrichment claims as applied to the salary equalization bonus. It is undisputed that sometime in 2003, Moore promised to pay Thomae an amount sufficient to equalize his 2003 base salary with the average of the *Page 11 
salaries of Thomae's peers. (Moore Aff. ¶ 10.) Columbia contends that because Thomae did not remain employed until February 2004, he is not entitled to this payment under any of the theories advanced by Thomae.
 A. Breach of Contract
Similarly to the performance bonus, Columbia argues that entitlement to the bonus was subject to a condition precedent that Thomae remain employed until February 2004. Therefore, there would be no breach of contract because Thomae resigned earlier. Moore claims that he explicitly told Thomae, when agreeing to the salary equalization payment, that he must remain on the payroll until February 2004 to receive the payment. (Moore Aff. ¶ 10.)[5] Thomae disputes that this condition was made explicit at the time. (Thomae Aff. ¶ 8.) Therefore, an issue of fact exists as to whether a condition precedent was expressly agreed upon.
Columbia argues that even if the issue was not explicitly discussed, a condition precedent may be implied by a custom in the investment business. See Restatement (Second) of Contracts § 203(b) (allowing terms to be implied by resort to course of performance and course of dealing among the parties, as well as usages of trade).[6] Thomae disputes that such a custom exists in the industry. (Thomae Aff. ¶¶ 7, 8.) In support, Thomae notes that his new employer pays out bonuses in December based upon performance during the calendar year. (Dep. of John M. Costello 17:11-20, May 1, *Page 12 
2007.) Therefore, the Court finds that a genuine issue of fact exists as to whether or not the usage of trade advanced by Columbia was so prevalent that Thomae should reasonably have expected it to be incorporated into his agreement. See id. § 221 (noting that a usage can supplement an agreement "if each party knows or has reason to know of the usage and neither party knows or has reason to know that the other party has an intention inconsistent with the usage").
In the absence of any express or implied agreement on this term, the Court finds that the length of employment necessary to earn a bonus would be an "omitted, essential term" of their employment contract.See Restatement (Second) of Contracts § 204 (stating that when "the parties to a bargain sufficiently defined to be a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances is supplied by the court"). In supplying a reasonable term, it appears that the rule of Oken v. National Chain Co. would control. 424 A.2d 234,235 (R.I. 1981). In that case, a salesmen left a company after obtaining orders for certain products, but before those products were shipped and before he was paid. The Court ruled that in the absence of an agreement to the contrary, the salesman was entitled to commissions based upon when the products were ordered, even though he was not normally paid until products were shipped. Id. at 235-36.
The Oken Court found that the time of payment was "but a manifestation of National's accounting procedures in regard to when commissions would be paid" and did not reflect when the commissions were actually earned.Id. at 236. The Court placed the burden on the employer to produce a clear and ambiguous agreement in order to alter the default rule that commissions were earned when the orders were accepted by the *Page 13 
employer. Similarly, in the absence of an express agreement or a usage of trade to the contrary, this Court finds that since the payment was in essence an increase in salary, a reasonable default term would provide that the payment was earned from the time of agreement.
Columbia relies on several cases which hold that, if continued employment is a condition precedent to the payment of a bonus, then an employer may properly refuse to pay when an employee leaves early.See, e.g., Schwartz v. Natwest Mkts., PLC, 2001 U.S. Dist. LEXIS 13391, *27 n. 15 (D.N.Y. 2001) (holding that an employee was not entitled to a bonus where written agreement required continued employment through the date of payment). Columbia's reliance on such cases is misplaced, however. The issue to be determined is whether or not such a condition precedent exists, not whether an employer may properly rely on an express condition precedent to deny a bonus.
Therefore, a fact finder must resolve the question of whether an express agreement existed, or whether a usage of trade exists which would require that an employee remain employed until bonuses were distributed. Therefore, the Court will deny Columbia's motion for summary judgment on the contract claim for the salary equalization bonus.
 B. Promissory Estoppel, Misrepresentation, and UnjustEnrichment
The Court's above analysis of the misrepresentation claim applies equally to the salary equalization claim. Thomae has not shown any evidence by which a fact finder could conclude that Moore did not intend to perform at the time he promised to equalize Thomae's salary. *Page 14 
Moreover, the theories of promissory estoppel and unjust enrichment are inapplicable to this case. Promissory estoppel is a theory that serves to enforce certain promises which are otherwise not enforceable for lack of consideration. In this case, there is an enforceable contract, but the parties dispute the terms of that contract. Moreover, there would be no unjust enrichment arising from Columbia's failure to pay Thomae if it has no contractual obligation to do so. Therefore, the Court will dismiss these claims with respect to the salary equalization bonus.
 Conclusion
After due consideration of the arguments advanced by counsel at oral argument and in their memoranda, the Court will deny Columbia's motion for summary judgment on the contract claim with respect to the salary equalization bonus. The Court will grant Columbia's motion for summary judgment on all other claims as described herein.
Counsel for Columbia may present an order consistent herewith which shall be settled after due notice to counsel of record.
[1] Columbia served as an asset management organization for Fleet Bank and, later, to Bank of America. (Thomae Aff. ¶ 2.)
[2] Columbia asserts this same argument with respect to the salary equalization bonus.
[3] A usage of trade is a custom or practice so regular in a particular trade as to justify an expectation that it will be observed in a particular agreement. See Restatement (Second) ofContracts §§ 219, 222(1). Such a usage may supplement an agreement by supplying a term omitted by the parties. Id. §§ 221, com. a. Whether such a usage exists, however, is a question of fact. Id. § 222(2).
[4] Because of this conclusion, the Court need not address whether there was a condition precedent to the receipt of a performance bonus. However, the Court will address this issue below with respect to the salary equalization bonus.
[5] Moore and Richard M. Young, another supervisor of Thomae's, both state that they informed Thomae of this requirement in November 2003 when Thomae announced he was resigning. (Moore Aff. ¶ 19; Aff. of Richard M. Young ¶ 4, Apr. 12, 2007.) However, this was well after Moore's promise of a salary equalization payment. Therefore, these statements would be ineffective to create a condition precedent since Thomae had already worked for several months under the new salary arrangement.
[6] A usage of trade is a custom or practice so regular in a particular trade as to justify an expectation that it will be observed in a particular agreement. See Restatement (Second) ofContracts §§ 219, 222(1). Such a usage may supplement an agreement by supplying a term omitted by the parties. Id. §§ 221, com. a. Whether such a usage exists, however, is a question of fact. Id. § 222(2).