# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### October 19, 2016 Session

## RICHARD MICHELHAUGH, ET AL. v. CONSOLIDATED NUCLEAR SECURITY, LLC

### Appeal from the Circuit Court for Anderson County
### No. B5LA0168    Donald Ray Elledge, Judge

---

### No. E2016-01075-COA-R3-CV-FILED-NOVEMBER 28, 2016

---

This appeal arises from a dispute over vacation benefits. Richard Michelhaugh and John Williams ("Plaintiffs"), employees of Y-12 in Oak Ridge, filed suit in the Circuit Court for Anderson County ("the Trial Court") against the contractor, Consolidated Nuclear Security, LLC ("CNS"), running their work site. Plaintiffs alleged that CNS deprived them of earned vacation time by changing the vacation policy mid work-year. CNS filed a Rule 12 motion to dismiss, which the Trial Court granted. Plaintiffs appeal to this Court. We find and hold that Plaintiffs alleged in their complaint that they were deprived of earned vacation time, that Plaintiffs' allegations were sufficient to withstand CNS's motion to dismiss, and that, therefore, the Trial Court erred in granting CNS's motion to dismiss. We reverse the judgment of the Trial Court and remand this case for further proceedings.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; Case Remanded

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and JOHN W. MCCLARTY, JJ., joined.

Gregory F. Coleman and Mark E. Silvey, Knoxville, Tennessee, for the appellants, Richard Michelhaugh and John Williams, on behalf of themselves and others similarly situated.

Kristi McKinney Stogsdill and Charles E. Young, Jr., Oak Ridge, Tennessee, for the appellee, Consolidated Nuclear Security, LLC.

# OPINION

## Background

As this case was dismissed by the granting of CNS's motion to dismiss, the facts as set out in this Opinion are those relevant and material factual allegations contained in the complaint. Plaintiffs initiated this case in response to CNS altering their vacation benefits policy mid-year. CNS contracted to lead operations at Y-12 in Oak Ridge. The prior contractor, B&W, had set up a vacation policy whereby salaried employees would accrue a year's worth of vacation time that was awarded in a lump sum at the end of the year. For example, a salaried employee's vacation time was earned throughout 2012, but was awarded in a lump sum on December 31 of that year. If an employee retired on January 1, 2013, the employee could cash in that unused vacation time. The Vacation Plan described the vacation time as "vested."

The Vacation Plan provided in relevant part:

**PURPOSE**
It is the policy of B&W Technical Services Y-12, LLC [the predecessor contractor to CNS] to provide annual vacation with pay during each calendar year to eligible employees. Rules pertaining to hourly employees are contained in the applicable collective bargaining agreement. This procedure replaced Y11-114, Vacation Plan, dated 04/09/08 and applies to all B&W Technical Services Y-12 salaried employees.
**APPLIES TO**
This procedure applies to all Y-12 employees. No provision of this procedure shall be construed as an employment agreement.

\*\*\*

**BUSINESS RULES**
B. Vested Rights to Vacation Eligibility for Salaried Employees
A salaried employee has vested rights to next calendar year's vacation if all of the following are applicable:
• The salaried employee was hired prior to January 1, 1996, or was reinstated on or after January 1, 1996, with immediate restoration of prior service which results in an adjusted company service date of December 31, 1995, or earlier;
• The salaried employee has completed one year of company service credit; and

• The salaried employee was on the payroll of the company on December 31.

**NOTE** An employee's company service date may be reinstated or adjusted based upon criteria established in Y11-120, Company Service Credit Rules and Adjustments.

1. Vested Rights to Vacation Eligibility for Full-Time Salaried Employees Who Are Absent On December 31

a. An employee is considered to be vested for vacation eligibility the following year if on December 31 the employee is absent due to disability and is receiving Non-Occupational or Occupational Short-Term Disability benefits.

b. An employee who is actively at work and is processed for termination on what otherwise would have been the employee's last normally scheduled work day in the month of December is considered on the payroll through the last calendar day of that month and is therefore vested for vacation eligibility for the following year.

**NOTE** Exceptions to this policy can be made by the President & General Manager in special circumstances.

c. An employee who begins a continuous vacation absence prior to December 31 which extends through the end of the calendar year is considered vested for vacation eligibility for the following year.

d. An employee is NOT considered to be vested for vacation eligibility for the following year if the employee dies prior to December 31. The employee will be considered to be on the payroll only as of the employee's last scheduled work day on which vacation was taken.

2. Vacation Eligibility for Part-Time Employees Rehired with an Adjusted Company Service Date Prior to January 1, 1996 Part-time employees reinstated on the payroll with an immediate restoration of prior service which results in an adjusted company service date are eligible for vacation on a prorated basis.

During the first year of rehire with an immediate restoration of company service, vacation eligibility for part-time employees will be prorated at 50% of full-time regular employees using the Vacation Schedule in Appendix B.

Thereafter, each succeeding calendar year's vacation is established and prorated on the basis of actual hours worked during the prior calendar year rounded to the next highest 5 percent.

CNS assumed control of operations at the site in mid-2014, and initially continued the old vacation policy. On December 11, 2014, CNS issued a standing order

changing the vacation policy. From January 1, 2015 on, vacation time would be earned throughout the year, rather than awarded in a lump sum at the end of the year. CNS posted on its website:

> What happens to my 2014 accrued vacation?
>
> Accrued vacation hours in your "bank" as of December 31, 2014, up to a maximum of 240 hours, will be carried over to your CNS PTO account. Accrued hours over 240 will be paid out as soon as administratively possible after the first of each year.

http://www.ens-11c.us//faqs

Richard Michelhaugh, an employee, and later, as amended, Plaintiffs filed suit in a putative class action. Plaintiffs alleged in part:

> 17. At the beginning of 2015, those employees of Y-12 who retired at the end of CY 2014 were told by CNS that their unused vacation payout at the time they retired did not include the value of vested vacation earned during CY 2014.
> 18. Similarly, currently active employees in 2015 who would have had access to vacation earned during CY 2014 on January 1, 2015 had their vested vacation arbitrarily removed by CNS.
> 19. These active and retiring employees thus lost a valuable vested vacation benefit at the arbitrary election of CNS.
>
> ***
>
> 63. Without justification, CNS breach its employment agreements with Plaintiffs and the members of the Classes by changing the vacation policy to eliminate vested vacation benefit owed to the Plaintiffs and the members of the Classes.
> 64. As a direct and proximate result of CNS's breach of the provisions of Vacation Plan, Number Y11-114, Revision 12/13/12, the Plaintiffs and the members of the Classes have suffered harm for current employees in the form of lost accrued vacation earned during calendar year 2014, and for employees who retired at the end of calendar year 2014 in the form of lost monetary value for vacation accrued during calendar year 2014.
>
> ***

-4-

72. Notwithstanding the material nature of the vested vacation benefits information that the CNS misrepresented, it never acted to correct the misinformation given to the Plaintiffs and the members of the Classes, but instead acted to reinforce and conceal their misrepresentations about the nature, scope, security and immutability of the vested vacation benefits through a company-wide pattern and practice of continued, pervasive misstatements and omissions, including the written documents cited herein.

73. If the Plaintiffs' and members of the Classes' vacation benefits were not in fact vested, then CNS breached its fiduciary duties on a continuing basis by negligently and/or fraudulently misrepresenting the nature of the vacation benefits through its failure to clearly and conspicuously disclose to the Plaintiffs and the members of the Classes: 1) complete, accurate and non-misleading material information regarding the possibility of changing the benefits provided under Vacation Plan, Number Y11-114, Revision 12/13/12 so as to deprive the Plaintiffs and the members of the Classes of vested benefits; 2) the material information that these Vacation Benefits were not vested; and 3) that changes were possible and/or were under serious consideration.

***

WHEREFORE, Plaintiffs respectfully requests that this Court issue an Order that will:

A. Certify this action as a class action, appoint the Plaintiffs named herein as Class representatives and appoint the undersigned attorneys as counsel for the class.

B. Declare that the Plaintiffs and the members of the Classes are entitled to reinstatement and restoration of their vested vacation benefits to which they were entitled under Vacation Plan, Number Y11-114, Revision 12/13/12.

C. Preliminarily and permanently enjoin CNS from implementing the changes to the vacation plan it initiated on January 1, 2015, and require CNS to return to and maintain the vested vacation benefits that Plaintiffs and the members of the Classes had earned during calendar year 2014.

D. In the alternative, grant the Plaintiffs and the members of the Classes monetary damages as necessary to restore them to the position in which they would and should have been in but for CNS's breach of the provisions of Vacation Plan, Number Y11-114, Revision 12/13/12.

E. Award Plaintiffs and the members of the Classes prejudgment interest.

F. Award Plaintiffs and the members of the Classes attorney fees and reasonable costs as allowed under the law;

G. Grant such further relief as may be deemed necessary and proper.

H. Plaintiffs and the members of the Classes request a jury trial of all issues so triable.

CNS filed a Rule 12 motion to dismiss for failure to state a claim, arguing that (1) there was no employee contract; (2) CNS changed the policy before Plaintiffs' vacation benefits vested; and, (3) Tennessee law recognizes no fiduciary duty or duty of good faith for an employer in the context of this case. The Trial Court heard CNS's motion to dismiss in April 2016. In May 2016, the Trial Court entered an order granting CNS's motion to dismiss. The Trial Court's oral findings, incorporated into its final judgment, stated in relevant part:

> We are here under a Rule 12 motion, and obviously under the terms of the Tennessee Rules of Civil Procedure, Rule 12, when that motion is filed, they are acknowledging that the issues are admitted for the purposes of this motion, but that does not acknowledge the interpretation of the law or the interpretation by the Court of what the law is that pertains to those issues. This is a case where CNS took over on or about July the 1st, 2014, began as a new employer for the workers there at the plant. They -- they on December the 11th, 2014 made an announcement concerning a change in the policy that was in existence by the previous employer. That policy totally changed what was called the vested rights -- the vested -- the vesting of vacation rights. They changed it before December the 31st, 2014. The issue is whether or not the vacation policy by both the predecessor and CNS was in fact a contract. There is no question that on page four of the -- let me find it - - page four of the policy it actually states this is not - - this procedure applies to all Y-12 employees, no provision of this procedure shall be construed as an employment agreement. That means subject to the terms and the conditions of any contract you have, if any, this doesn't apply. This is not an employment agreement, it's a benefit. It goes on to say, "Our employees are governed by the terms and applicable bargaining unit contracts." The case law that I read supports that. Did they breach a contract? No. There is not a breach of contract in my mind. In reading the case laws that applied, I just cannot find that there is a breach of contract. To hold that any employer who comes in and takes over a business is bound forever and ever to do exactly what the prior employer did is not law that I'm aware of in any state in this nation. They have a right to amend and alter their policies and procedures. And, in this case, the vacation policy, not contract, was altered and amended before the vesting on December

-6-

31st, 2014. The Court finds they had the ability to do that. I would have to agree with Counsel that Mr. Silvey did a wonderful job on the fiduciary duty. Because that one hit me. I started looking through that and I thought that is an ERISA or very similar to an ERISA without saying ERISA. But it's unique and, again, shows the intelligence and professionalism of the attorney for the plaintiffs. It's a unique plan. But, of course, if it was alleged to be ERISA, I wouldn't have jurisdiction; Federal Court would have jurisdiction. So the expectation of a benefit is not the vesting of a benefit, it's simply an expectation. In this case, the Court finds -- let me make some more findings – I've done several -- so I find also there is not a fiduciary relationship. I know of no law in Tennessee either, no statutory or case law, that makes a fiduciary relationship by the employer to the employee. There is law otherwise. CNS adopted their plan and their new policy, made it effective January the 1st, 2015. Adcox speaks directly to this. When language in vacation policy is not -- that this is not a contract, that's exactly what it ruled. The other cases cited by Counsel for the plaintiff, that wasn't part of the provision. There was -- there was excellent argument, I didn't hear it today, about the contracts by adhesions and things of that nature. But, still, this was not a contract, it was a policy. Everything I've read the Court finds is a policy. Tackett v. M&G Polymers should not construe ambiguous wording to give lifetime benefits. I agree. So I think the motion is well taken. I have before me and have read before me the policy and the procedures; that was one of the things that was in fact attached to the plaintiff's original complaint which made it a part of the hearing -- a part of this -- as Exhibit A. The standing order that came out December the 11th is Exhibit B. It's all here in front of me. Exhibit C is the blue sheet cover block approval. So, my interpretation -- and certainly there are a lot greater minds than mine, and sometimes, a few times, they have told me I'm wrong -- but when I make a ruling, I do it after having read and re-read and done as much as I can within the confines of the -- without going outside the pleadings, and I just do not believe this is a contract that's not ever being able to be altered. It was not a contract. It specifically says it's not a contract. And they came in, they had a right to change the policy, and they did that. So, well argued, well prepared, well presented, but I find that the motion to dismiss should be granted. Costs will be taxed to the plaintiff.

Plaintiffs appeal to this Court.

**Discussion**

We restate and consolidate the issues Plaintiffs raise on appeal as follows: whether the Trial Court erred in granting CNS's motion to dismiss.

This case was resolved below on a Rule 12 motion to dismiss. The Trial Court considered exhibits attached to Plaintiffs' complaint, which raises the issue of whether the motion to dismiss should be treated as a motion for summary judgment. This Court previously has stated:

> There are exceptions to the general rule . . . that a court must convert a Tenn. R. Civ. P 12.02(6) motion to a motion for summary judgment if the court considers evidence outside the pleadings. In *Indiana State District Counsel of Laborers v. Brukardt*, No. M2007-02271-COA-R3-CV, 2009 WL 426237 (Tenn. Ct. App. Feb. 19, 2009), the court adopted the following language:
>
> > Numerous cases ... have allowed consideration of matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned; these items may be considered by the district judge without converting the motion into one for summary judgment.
>
> *Brukardt*, 2009 WL 426237, at *8 (quoting Wright and Miller, FEDERAL PRACTICE AND PROCEDURE, 1357, p. 376 (3d ed. 2004)).

*Haynes v. Bass*, No. W2015-01192-COA-R3-CV, 2016 WL 3351365, at *4 (Tenn. Ct. App. June 9, 2016), *Rule 11 appl. perm. appeal denied Oct. 21, 2016*.

In the present case, the parties do not dispute the authenticity of the exhibits presented by Plaintiffs. The issue involves the interpretation of the documents. It is therefore not necessary for us to treat CNS's motion to dismiss as a motion for summary judgment.

With respect to the standard of review on motions to dismiss, our Supreme Court has instructed:

> A motion to dismiss a complaint for failure to state a claim for which relief may be granted tests the legal sufficiency of the plaintiff's complaint.

*Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 894 (Tenn. 2011); *cf. Givens v. Mullikin ex rel. Estate of McElwaney*, 75 S.W.3d 383, 406 (Tenn. 2002). The motion requires the court to review the complaint alone. *Highwoods Props., Inc. v. City of Memphis*, 297 S.W.3d 695, 700 (Tenn. 2009). Dismissal under Tenn. R. Civ. P. 12.02(6) is warranted only when the alleged facts will not entitle the plaintiff to relief, *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011), or when the complaint is totally lacking in clarity and specificity, *Dobbs v. Guenther*, 846 S.W.2d 270, 273 (Tenn. Ct. App. 1992) (citing *Smith v. Lincoln Brass Works, Inc.*, 712 S.W.2d 470, 471 (Tenn. 1986)).

A Tenn. R. Civ. P. 12.02(6) motion admits the truth of all the relevant and material factual allegations in the complaint but asserts that no cause of action arises from these facts. *Brown v. Tennessee Title Loans, Inc.*, 328 S.W.3d 850, 854 (Tenn. 2010); *Highwoods Props., Inc. v. City of Memphis*, 297 S.W.3d at 700. Accordingly, in reviewing a trial court's dismissal of a complaint under Tenn. R. Civ. P. 12.02(6), we must construe the complaint liberally in favor of the plaintiff by taking all factual allegations in the complaint as true, *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d at 894; *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d at 426; Robert Banks, Jr. & June F. Entman, *Tennessee Civil Procedure* § 5-6(g), at 5-111 (3d ed. 2009). We review the trial court's legal conclusions regarding the adequacy of the complaint de novo without a presumption of correctness. *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d at 895; *Highwoods Props., Inc. v. City of Memphis*, 297 S.W.3d at 700.

*SNPCO, Inc. v. City of Jefferson City*, 363 S.W.3d 467, 472 (Tenn. 2012).

With respect to vacation benefits, which this case is about, our Supreme Court has stated:

Our traditional view has been that vacation pay is a component of that compensation. *See Textile Workers Union of Am. v. Brookside Mills*, 203 Tenn. 71, 309 S.W.2d 371, 373 (1957)) ("[V]acation pay is in effect additional wages or compensation....."); *Gaines v. Response Graphics, Inc.*, No. 01-A-01-9204-CV-00181, 1992 WL 319441, at *1, 1992 Tenn. App. LEXIS 895, at *3-4 (Tenn. Ct. App. Nov.6, 1992) ("A paid vacation is a form of compensation.... Absent some agreement to the contrary, vacation pay is just like any other compensation that has accrued up to the time of separation."); *Weesner v. Elec. Power Bd. of Chattanooga*, 48 Tenn. App. 178, 344 S.W.2d 766, 768 (1961) ("Retirement rights are analogous to

provisions fixing the rights [of] employees for paid vacations.... Both are inducements of the employment, both provide for the employees' well-being and peace of mind, which enures to the benefit of the employers."); *Black's Law Dictionary* 1610 (8th ed. 2004) ("Wages include every form of remuneration payable for a given period to an individual for personal services, including salaries, commissions, vacation pay, bonuses....").

*Amos v. Metropolitan Gov't Of Nashville and Davidson County*, 259 S.W.3d 705, 712 (Tenn. 2008).

Plaintiffs, in arguing that the Trial Court erred in granting CNS's motion to dismiss, raise two primary arguments on appeal: (1) that the Vacation plan, even if it did not create a general employment contract, created vested vacation rights; and (2) that CNS breached either a fiduciary duty to Plaintiffs, or a duty of good faith and fair dealing.

We first address whether the Vacation plan created contractual obligations on the part of CNS. This Court has stated:

Even in the absence of a definite durational term, an employment contract still may exist with regard to other terms of employment. *Williams v. Maremont Corp.*, 776 S.W.2d 78, 80 (Tenn. App. 1988); *accord Hooks v. Gibson*, 842 S.W.2d 625, 628 (Tenn. App. 1992). In this regard, this Court has recognized that an employee handbook can become a part of an employment contract. *Smith v. Morris*, 778 S.W.2d 857, 858 (Tenn. App. 1988) (citing *Hamby v. Genesco, Inc.*, 627 S.W.2d 373 (Tenn. App. 1981)); *accord Davis v. Connecticut Gen. Life Ins. Co.*, 743 F. Supp. 1273, 1278 (M.D. Tenn. 1990). In order to constitute a contract, however, the handbook must contain specific language showing the employer's intent to be bound by the handbook's provisions. *Smith v. Morris*, 778 S.W.2d at 858. Unless an employee handbook contains such guarantees or binding commitments, the handbook will not constitute an employment contract. *Whittaker v. Care–More, Inc.*, 621 S.W.2d 395, 397 (Tenn. App. 1981). As stated by one court, in order for an employee handbook to be considered part of an employment contract, "the language used must be phrased in binding terms, interpreted in the context of the entire handbook, and read in conjunction with any other relevant material, such as an employment application." *Claiborne v. Frito-Lay, Inc.*, 718 F.Supp. 1319, 1321 (E.D. Tenn. 1989).

*Rose v. Tipton County Pub. Works Dep't*, 953 S.W.2d 690, 692 (Tenn. Ct. App. 1997) (footnote omitted).

In our judgment, the Trial Court correctly held that the Vacation Plan by itself is not an enforceable contract. The Vacation Plan states plainly "[n]o provision of this procedure shall be construed as an employment agreement." No other language in the Vacation Plan is such as to override this explicit and unequivocal declaration. CNS had the right to amend its vacation benefits policy prospectively at any time. We find no merit in any arguments raised by Plaintiffs with regard to alleged breach of fiduciary duty or breach of good faith and fair dealing.

However, this does not end our analysis. Regardless of whether or not the Vacation Plan by itself was an enforceable contract, Plaintiffs under the factual allegations of the complaint had a right to the vacation benefits already earned under the old policy. Consistent with our Supreme Court's holding in *Amos v. Metropolitan Gov't Of Nashville and Davidson County,* these vacation benefits were part of Plaintiffs' compensation, and they can no more be deprived of already-earned vacation benefits than they can be deprived of their already-earned salary. CNS acknowledges that Plaintiffs must receive the vacation benefits they had earned. CNS contends, however, that Plaintiffs have been deprived of nothing because any vacation benefits they had earned had not vested. As alleged, CNS takes the position that it could, even as late in the year as December 11, 2014, or apparently even later in December 2014, simply make the vacation time policy change as it did and that change results in the covered employees who had worked all of 2014 under the old policy receiving no vacation days for the year of 2014. Plaintiffs, in their complaint, allege that they did, in fact, lose earned vacation benefits for the year 2014 because they had worked under the prior policy all of 2014 until the change was announced on December 11, 2014 to be effective January 1, 2015.

CNS argues that to hold other than as the Trial Court did would be tantamount to saying an employer never can change vacation benefits policy with its employees. Our holding today leads to no such conclusion. An employer such as CNS can, of course, change its vacation policy just as it can change the other aspects of its compensation policy such as salary. What it cannot do under our holding, is to retroactively lower the compensation to its employees' detriment. CNS's argument is that it had the right to eliminate or reduce a full year's worth of vacation days worked for and earned as compensation by its employees just as long as it did so before the magic day of December 31, 2014. That is akin to telling its monthly salaried employees on December 30 that they will be paid half of their salary for the month of December because the employer retroactively has changed its salary policy.

As alleged in the complaint, there was a contract of employment between CNS and its employees. The employees would perform certain work tasks as assigned to them by CNS, and CNS would compensate its employees for their work. As alleged, that compensation included vacation days. An employer generally does not give vacation days to its employees just out of the goodness of its heart, but does so, as held by our Supreme Court, as part of the employee's total compensation package. Likewise, employees generally do not perform work tasks for their employer just out of the goodness of their hearts but do so to earn their total compensation. Plaintiffs' complaint alleges that after working almost the entire year of 2014 with part of their compensation being that come the first of 2015 they would receive their vacation days earned by working all of 2014, CNS instead unilaterally and retroactively changed their compensation package.

On December 11, 2014, CNS amended its vacation policy, as it had the right to do going forward. The remaining question at this motion to dismiss stage is what happened to the vacation days that Plaintiffs had earned in 2014 as part of their compensation leading up until the effective date of the policy change, vacation time that they worked for almost all of 2014 and reasonably expected to receive as part of their total compensation. As alleged, this already earned vacation time was not merely an expectation but instead was part of their total compensation. Whatever changes were instituted going forward, Plaintiffs have alleged facts sufficient to withstand a Rule 12 motion to dismiss that they were entitled to vacation days which they had worked for and earned in 2014 prior to the policy change.

At this motion to dismiss stage, we are neither in a position to nor are called on to make a final determination as to whether Plaintiffs received all the vacation time they had worked for as part of their total compensation before the change in policy took effect. All we hold in this Opinion is that Plaintiffs' complaint, construed liberally as we must, is more than sufficient to withstand a Rule 12 motion to dismiss. Therefore, we hold that the Trial Court erred in granting CNS's motion to dismiss for failure to state a claim upon which relief could be granted. We reverse the judgment of the Trial Court, and remand for further proceedings consistent with this Opinion.

## **Conclusion**

The judgment of the Trial Court is reversed, and this cause is remanded to the Trial Court for collection of the costs below and for this case to proceed. The costs on appeal are assessed against the Appellee, Consolidated Nuclear Security, LLC.

_____
D. MICHAEL SWINEY, CHIEF JUDGE